STATE OF MISSOURI, EX REL. A. M. BERRY, *v.* WILLIAM SHIELDS, AUDITOR, ETC.

June 26, 1877.

1. The act of the General Assembly, approved April 24, 1877, creating the office of reporter of the St. Louis Court of Appeals, is not unconstitutional. Its enactment was a legitimate exercise of the powers conferred upon the Legislature, by section 15 of the schedule under article 9 of the Constitution of 1875, to "pass all such laws as may be necessary to carry this Constitution into full effect."

2. In the absence of such an express grant of power the Legislature may adopt any measure, not specifically forbidden, in aid of the operation of a constitutional provision.

3. The General Assembly may, in the exercise of its discretion, create any

agency which it may deem essential to give efficacy to a constitutional provision, and courts will not revise the exercise of such discretionary powers.

4. The question as to whether the system of reporting and publishing the decisions of the Court of Appeals adopted by the act under consideration was necessary to carry the Constitution into full effect was a matter within the legislative discretion.

5. A law is neither "local" nor "special," within the meaning of the Constitution, which results directly or indirectly from a specific constitutional requirement.

6. A law creating an office and prescribing the duties of the officer, whose services are to be rendered in, and form a part of, the administration of the laws of the State, and affect equally all who come within their range, is neither "local" nor "special," within the meaning of the Constitution.

7. The source from which the expenses of the office are to be paid is not a test by which to determine whether the act creating the office is "local" or "special."

APPLICATION for *mandamus*.

*Demurrer to return sustainea.*

A. R. TAYLOR, for relator : If there is a doubt as to the constitutionality of the law, it must be upheld. — *The State* v. *Cape Girardeau R. Co.*, 48 Mo. 468 ; *Slack* v. *Jacob*, 8 W. Va. 612 ; *Attorney General* v. *City of Eau Claire*, 37 Wis. 400 ; *McCormick* v. *Alexander*, 2 Ohio St. 75. As to when a law is or is not "local" or " special." — *Conner* v. *Mayor*, 5 N. Y. 285 ; *Phillips* v. *Mayor*, 1 Hilt. 483 ; *The People* v. *Stephens*, 2 Abb. Pr. (N. S.) 483 ; *Williams* v. *The People*, 24 N. Y. 405 ; *The State* v. *Lean*, 9 Wis. 279 ; *Clark* v. *City of Janesville*, 10 Wis. 136 ; *City of Rochester* v. *Briggs*, 50 N. Y. 553 ; *The People* v. *Hills*, 35 N. Y. 449 ; *Brewster* v. *City of Syracuse*, 19 N. Y. 116 ; *Burnham* v. *Acton*, 7 Robt. 395, and cases cited ; *Bretz* v. *Mayor*, 6 Robt. 325.

E. T. FARISH, for respondent : That the act of April 24, 1877, is a " local" and " special " law, see *City of Atchison* v. *Barthelow*, 4 Kan. 124 ; *The People* v. *O'Brien*, 38 N. Y. 194 ; *The People* v. *Hills*, 35 N. Y. 451 ; *The People* v. *McCann*, 16 N. Y. 60 ; 3 Park. Cr. 272 ; *Williams* v. *The People*, 24 N. Y. 405 ; Const. Mo. 1875, art. 4, sec. 54.

LEWIS, P. J., delivered the opinion of the court.

The relator applies for a *mandamus* to compel the city auditor of St. Louis to audit and allow his account for one month's salary as reporter of the decisions of the St. Louis Court of Appeals. The respondent, in his return upon the alternative writ, denies that there is any such office as the relator claims to hold, and affirms that the act of the General Assembly, approved April 24, 1877, attempting to create it, is unconstitutional and void. A demurrer to the return places the whole controversy upon the validity of the act.

The personal interest of the relator in obtaining pay for his services seems a matter of small moment compared with the importance to the public at large of the principal questions whose solution is necessary to the determination of this controversy. The extent of the powers left in the Legislature, with the forms essential for their exercise, since the introduction, with our new Constitution, of some novel restrictions and limitations, are matters of vital interest to every citizen. But no phase of the common concern can possibly transcend one which brings into view the absolute needs of an efficient administration of justice over one-fourth of the wealth and population of the State.

The petition alleges, and the return does not deny, that since the organization of this court 563 causes have been disposed of on written opinions, of which eighty-six in all have been taken by appeal to the Supreme Court. There have thus accumulated, in a little over a year, 477 final expositions of the law, which are of binding authority on seventeen courts of record, embodying all the original civil, criminal, and probate jurisdiction throughout the counties composing the Court of Appeals' district. For these courts the opinions thus delivered are as conclusively the law as are the adjudications of the Supreme Court or the statutes enacted by the General Assembly. It is not possible for them, however learned and able their judges may be, to

solve the complicated and varying problems of human right with consistency, and in steady conformity with paramount rulings, unless they have some sort of access to the utterances of their common superior. If they could do so, there would be no need for this or any other appellate court. The conspicuous presence of appellate tribunals in all the judicial systems of the civilized world demonstrates the recognized necessity, not merely for their existence, but for that direct communication between them and the inferior courts without which they could accomplish little or nothing. If their practical utility were intended to go no further than a settlement between the parties to each individual case, an oral declaration of the result would suffice in every instance. But when it is required that their opinions be written, this means that each adjudication is to be a guide for similar cases that may come after. It results that the promulgation of such adjudications, in some form that may be practically available, is one of the chief ends for which appellate tribunals are created.

The written opinions of the St. Louis Court of Appeals are filed in the clerk's office, where they become permanent records. In a very few years they may be numbered by thousands, instead of hundreds. Will finite memories among courts or counsel be capable of recalling, whenever demanded, the points decided in a given connection, the precise cases in which they arose, the manner of their judicial treatment, and the exact degrees of resemblance between different cases, as new combinations in controversy appear from time to time? If so, the litigants in St. Charles, Warren, Lincoln, and St. Louis Counties may provide themselves, at whatever expense, as each Circuit Court term approaches, with duly certified transcripts of all the opinions theretofore delivered by this court touching the various branches of judicial enquiry within which their controversies may fall. But if, as a more reasonable proposition, even St. Louis lawyers and judges may find it impracticable to ferret out,

from personal memory, or by enquiring of the clerk, or by persistent canvassing among a host of attorneys, who may or may not know what opinions previously recorded may be applicable to their cases, to the end that justice may be administered without frequent contradictions or vain researches over grounds fully explored, then some means of information, other than the certified transcript, must be adapted to a rational fulfilment of the purposes for which this court was constitutionally established.

If all the adjudications of the St. Louis Court of Appeals were subject to review by a higher tribunal, the importance of these considerations might not be so apparent. No decision would then be final, or binding on inferior courts, until after such review. But, practically, about seven-eighths of all the litigation in our great centre of trade and population finds its last resort in this tribunal. To that extent, then, the Supreme Court Reports throw no light whatever on the ways of our jurisprudence. Those volumes continue, and will yet continue indefinitely, to enlighten and guide our courts by new applications of judicial wisdom to the ever-accruing complications of business, property, and social relations in a great State. But as to all those similar, and yet unlike, complications — of almost equal number in a given time — whose judicial treatment can never appear in them, the courts of St. Louis and adjoining counties, without similar publications, would be far worse off than if this court had never been created.

No comparison, in this connection, can be made between the Court of Appeals and the general term of the St. Louis Circuit Court, with reference to its former capacity as an intermediate appellate tribunal. Three vital distinctions exclude all analogy ·

1. The general term was, in no case whatever, a court of last resort.

2. Its opinions were not binding authority on any other court.

3. Its rulings, so far as they bound the special terms, were made by the same judges who held the special terms, and who had, therefore, only to repeat their own conclusions. The records of the Court of Appeals already show that appeals have been taken and litigation protracted in numerous cases whose *nisi prius* judgments would doubtless have remained undisturbed if appellants had known the previously declared views of this court upon the points involved. The existing condition of things might be compared, in effect, with those systems of judicial secrecy which were always the detestation of a free people.

Experience has been showing, for some centuries, what the present universal practice attests, that the only effectual way in which the rulings of superior courts can be made available for guidance and for uniformity of action in inferior tribunals is by published reports of the decisions, with appropriate *syllabi*, classified under alphabetical headings, so that light upon any particular subject may be found when wanted. No other method has ever been recognized as worthy of consideration. The whole controversy before us, then, seems narrowed down to the question whether the General Assembly has constitutional authority, by legislation, through the only practicable channel, to give full efficacy, upon the footing of accustomed standards, to one of the organic provisions for a judicial department of the State government.

Section 15 of the schedule, under article 15, State Constitution, says: "The General Assembly shall pass all such laws as may be necessary to carry this Constitution into full effect." The Constitution elsewhere declares that a Court of Appeals shall be established, with certain powers and duties, and provides for the election of its judges. But if no further legal provision were made, the court would never become an operative agency in public affairs. It must have a place to sit in, with stationery, fuel, furniture, and other conveniences. It must have ministerial officers,

to execute its process, preserve order, and perform other necessary services. The Constitution provides for none of these, otherwise than through its general charge laid upon the Legislature to see that no necessary thing be wanting to enable the court to perform properly all the functions for which it was designed. What aids are necessary, and how to be selected, are matters confided, in the broadest possible terms, to the legislative discretion. From this discretion there can be no appeal. When, in its exercise, the Legislature shall declare any officer, by whatsoever name or title he may be called, or howsoever to be compensated for his services, to be a necessary or proper adjunct for effecting the constitutional purposes of the court, it becomes the duty of every court and every officer in the State to uphold and obey, as far as in him lies, the law so made by direct command of the Constitution. To deny to the Legislature the power to create an agency which it considers essential to the efficacy of a constitutional instrument for the public good, or to revise its discretion in so doing, is to deny to it every discretion and every authority to " pass such laws as may be necessary to carry this Constitution into full effect."

We consider this constitutional grant, or rather command, unquestionably ample to sustain the enactment to which the respondent objects. But, were it literally absent from our organic law, there is abundant authority for holding that, under the general grant of legislative authority, the Legislature may adopt any measure, not specifically forbidden, for the purpose of aiding or amplifying the operation of a constitutional provision. Since, however, the respondent urges certain specific constitutional objections to the act in question, we will here consider them.

We are informed that the act is " local and special," and therefore void under section 54 of article 4 of the Constitution, because " notice of the intention to apply therefor " was not " published in the locality where the matter or

thing to be affected" was situated. It would be a sufficient answer to all the points and authorities here presented in support of that position that no law can be either local or special, within the meaning of the Constitution, which results directly or indirectly from a specific constitutional requirement. It would be a manifest absurdity to assume that the Constitution, when directing the Legislature to pass a certain law, could at the same time require a notification to "the people of a locality," as respondent suggests, for the purpose of "enabling them to defeat the law." We cannot so construe the Constitution as providing methods for setting at defiance its own commands. But, aside from this view, it seems no less incongruous to call that a local or special law whose subject-matter is a creation of the whole people, through their Constitution, and presumably an object of their common interest. The judicial department is a unit of power established for the entire State, as are each of the other departments, legislative and executive. The Court of Appeals is one of the features of that department, but is none the less identified with the State system because of a circumscribed territorial jurisdiction. If, as the respondent argues, the limits of territorial occupancy or jurisdiction must in all cases furnish the test of character, whether general or local and special, within the meaning of the constitutional restriction, the wheels of legislation will be impeded to an extent that was never imagined by the framers of the Constitution, or the people who adopted it. Every Circuit Court in the State is limited in its jurisdiction by its county boundaries. The Legislature, therefore, can pass no law altering or fixing the terms of the Warren Circuit Court, for instance, without a previous publication "notifying the people of the locality." Nor, without such publication, can any law be passed regulating the duties of the clerk of the Court of Appeals, or even the practice in this court. All such enactments would be both local and special, according to

the respondent's definitions, since. they would "relate to matters about which the people of Jackson or Buchanan County know nothing, care nothing, and have no concern." Upon the same terms, a very large number of acts passed at the last .session of the General Assembly are unconstitutional and void. Among them, unquestionably, are " An act.relating to the sheriff of the city of St. Louis," approved May 2, 1877 ; " An act to create election districts for justices of the peace in the city of St. Louis," etc., approved April 27, 1877 ; "An act relating to final process from courts of record in the city of St. Louis," etc., approved May 2, 1877 ; in short, all the laws passed in order to secure harmony in official proceedings under the changes introduced by the " Scheme of Separation," are literally within the definitions of local and special laws, as insisted on for the respondent. There is but one · escape from the conclusion that all are invalid. It lies in the provision that the " General Assembly shall pass all such laws as may be necessary to carry this Constitution. into full effect." The Scheme of Separation, like the Court of Appeals, though more remotely, was a creation of the Constitution. Not a word is said in the Constitution about election districts for justices of the peace in the city of St. Louis, or about the subject-matters of the other acts referred to ; nor is any exception expressed in the constitutional restriction which might favor untrammelled legislation upon those subjects of " local and special" interest. But in the legislative discretion the measures thus provided for were deemed proper adjuncts or aids for effecting the constitutional purposes of the Scheme and Charter, securing thereby a greater efficacy in carrying out the objects of the newly-created form of local government. If it be argued that those measures were more necessary to the efficiency of the Scheme and Charter than an official reporter was to that of the Court of Appeals, for the purposes, respectively, of their creation,

the answer is that, upon all such questions, the Legislature is the exclusive judge.

Counsel for the respondent urges as a distinctive feature, stamping the act under consideration with the impress of a local and special law, the payment of the reporter's salary by the counties composing the district. The distinction is fanciful rather than real. Nothing in the Constitution makes a law any more or less local and special, or, if really local and special, any more or less objectionable, because of the source from which expenses are to be paid. The same sort of argument would apply to the case of stationery, or any other necessary convenience recognized as proper to be furnished for the court. As well might objection be made against a law regulating the payment of court fees by the suitors therein. A measure being put in operation as constitutionally competent and proper, the payment of its attendant expenses, from whatever source not expressly forbidden, is a mere incident. The Constitution of Georgia provides that " all bills for raising revenue or appropriating money shall originate in the House of Representatives." The charter of a town originated in the Senate, and authorized the imposition of taxes on the townspeople. It was held valid. Said the Supreme Court: " In such a case taxing is not the end ; it is a mere incident." *Harper* v. *Commissioners*, 23 Ga. 569. The respondent's counsel, in an able and exhaustive brief, refers us to a number of cases decided in New York, where the Constitution directs that no private or local bill shall embrace more than one subject, etc. We have carefully examined every case in which an act was adjudged to be local, within the meaning of the restriction. They all relate, without exception, to courts or municipal corporations created by the Legislature itself. No one of the acts was passed in pursuance of a constitutional direction, or in aid of a special constitutional instrumentality. In *Williams* v. *The People*,

24 N. Y. 405, the act under consideration made certain regulations for police justices, and their courts and clerks, in the city of New York. So much of the law was declared to be local. But in the same act a special punishment for petit larceny was prescribed, to be operative within the limits of New York City, and not elsewhere. This was held to be *not* local, within the meaning of the Constitution. In *The People* v. *McCann*, 16 N. Y. 60, the act related to a number of courts, some being of legislative creation and others belonging to the constitutional judiciary system of the State. Although the distinction is not so expressed in words, an examination of the New York Constitution discovers that the courts as to which the act was declared local belonged to the former class; while as to those found in the latter, the act was held to be general, and not local. On the other hand, the authorities are very numerous which sustain the general views expressed in this opinion. In *Connor* v. *The Mayor*, etc., 5 N. Y. 285, it was contended that "An act in relation to the fees and compensation of certain officers in the city and county of New York" was in contravention of the constitutional provision, above referred to, concerning private and local bills. The act was sustained. Said Foot, J.: "Regulating the amount and manner of paying the officers, or any given number of the officers, of a county of this State, for their official services, when such services are rendered in and form part of the administration of the laws of this State, and affect equally the whole citizens thereof who come within their range, [the act] can neither be *private* nor *local*, in the view contemplated by the Constitution."

In *Phillips* v. *The Mayor*, etc., 1 Hilt. 483, an amended charter of the city of New York was considered with reference to the same constitutional restriction. The court held that "a statute cannot be termed local or private which provides for the government of a considerable portion of

the territory and population of the State, delegating powers of legislation and authorizing the passage of laws, as well as the administration of them, which, in their operation, affect all the citizens of the State who, either in their persons come within the range, or whose property is within the limits, of that jurisdiction.'' .

In *The State* v. *Lean*, 9 Wis. 279, it was held that " the character of an act of the Legislature, whether it be a general law or not," * * * "is determined by the greater or less extent to which it affects the people, rather than by the extent of territory over which it operates. Therefore, a law operating in a single county, but affecting the rights of all the people therein, is a general law."

For similar reasons in *Burnham* v. *Acton*, 7 Rob. Pr. 395, an act creating a metropolitan sanitary district and board of health for New York City and County was held to be " not a private or local law, and therefore not exposed to the constitutional objection."

Said the court, in *West* v. *Blake*, 4 Blackf. 236 : " Statutes incorporating counties, fixing their boundaries, establishing court-houses, etc., for public uses, all operate upon local subjects. They are not, however, for that reason special or private acts." See, also, *Bretz* v. *The Mayor, etc.*, 6 Rob. Pr. 327 ; *Hingle* v. *The State*, 24 Ind. 28 ; *The People* v. *Stephens*, 2 Abb. Pr. 348.

We are of opinion that "An act to provide for reporting and publishing the opinions of the St. Louis Court of Appeals," approved April 24, 1877, cannot be called a local or special law, within the meaning of the Constitution, but is in all respects valid ; not merely because it transcends no constitutional limitation, but because it was manifestly passed in the exercise of a competent legislative discretion, in obeying a positive constitutional requirement. All the judges concurring, the relator's demurrer is sustained.