STATE OF MISSOURI, EX REL. LEWIS B. BEACH, *v.* ISAAC M. MASON.

July 9, 1877.

1. The Scheme and Charter were ratified on August 22, 1876, and became the organic law on October 22, 1876, and operated to abolish the office of marshal of the old county of St. Louis, and this without reference to whether the laws relating to the office of marshal of St. Louis County were general or special.

2. The office of county marshal having been abolished, the freeholders, by virtue of the powers given them by the Constitution, had authority to provide that the duties and functions which had previously been those of the county marshal should devolve upon the city marshal, the jurisdiction of the courts whose process it was made his duty to execute remaining as before, until otherwise provided; and he having been elected, and having qualified, his performance of the duties of his office was not an usurpation of the functions of the sheriff of the city of St. Louis.

APPLICATION for *quo warranto.*
*Judgment for respondent.*
McGINNIS & SEARLE and J. O. BROADHEAD, for relator.
C. C. SIMMONS and J. R. HARRIS, for respondent.

HAYDEN, J., delivered the opinion of the court.

This is an information in the nature of a writ of *quo warranto.* The substantial charge of the relator is that on October 22, 1876, when the scheme of separation between the city and county of St. Louis went into effect, the respondent usurped certain of the functions of the sheriff of the city of St. Louis, and intruded into that office, by executing processes of the St. Louis Criminal Court, the Court of Criminal Correction, and the St. Louis Probate Court, and still does so; these being duties, as is alleged, which properly belong to the sheriff of the city of St. Louis to perform. The return denies these allegations, and alleges that at the general election of November, 1876, the respondent was duly elected marshal of the county of St. Louis, and accordingly commissioned; that he qualified, and is dis-

charging the duties of his office according to law; that he was duly elected marshal of the city of St. Louis at the election for city officers of that city, in April, 1877, and has qualified according to law as such officer.

There was a demurrer to the return, and an agreed statement of facts then filed, which, in substance, is as follows:

At the general election held on November 7, 1876, the respondent was, as he claims, elected marshal of the county of St. Louis, as that county was constituted before October 22, 1876; that he was duly commissioned; that he qualified, and on or about November 28, 1876, began to discharge and thenceforward discharged the duties of county marshal, as they existed by law before the adoption of the Scheme and Charter, and that he has executed the process of the courts above named as far as their jurisdiction extends; that on the first Friday in April, 1877, at the city election in St. Louis, held under the provisions of the Scheme and Charter, he was duly elected, received a certificate of election, and has given bond to the city of St. Louis, but has not yet assumed the office of city marshal for reasons given; that in June, 1877, John Finn, duly appointed sheriff of the city of St. Louis, as organized under the Scheme and Charter, has qualified, and is executing the process of the Circuit Court of St. Louis County. The relator demands that the respondent should show by what authority the respondent is performing the duties which the information charges pertain to the office of sheriff of the city of St. Louis.

In the case of The State, ex rel. Beach, v. Finn, recently decided by this court, it was held that, the Scheme and Charter having by the will of the people, as declared at the election of August 22, 1876, become the organic law on October 22, 1876, no such office as sheriff of the former county of St. Louis existed, and consequently the person who received the highest number of votes for that pretended office was not elected, as he might have been had not the Scheme and Charter been carried. The first question which

arises is whether there was any such difference on November 7, 1876, as made the election for marshal of St. Louis County valid, while the election for sheriff was invalid. It is evident there was no such difference. The Constitution itself supplies the element of separation, and contemplates the abolition of all those offices which were distinctive parts of the old political organization. The freeholders could not have proceeded upon any other basis of action than that furnished by the Constitution ; and by that basis, as subsequently elaborated and carried into detail by the freeholders, the ratification of the people having followed, the offices of sheriff and marshal of the old county ceased to exist. It matters not, in this respect, whether the laws relating to the office of marshal of St. Louis County were general or special ; that office was as inconsistent with the basis of the scheme as were the offices of judges of the County Court of the old county. It is true that, by an express clause in the 24th section of the 9th article, it is provided that the County Court shall cease to exist ; but that this was the intention of the framers of the Constitution would have been evident without the special words to that effect. The provisions of the Constitution embodying the basis on which the freeholders were to act contemplate alike the abolishment of the County Court of the old county, and of the offices of sheriff and marshal of the old county. When the new county called the " City of St. Louis " sprang into being, a new office of sheriff for such new county sprang also into being. New offices of judges of a new County Court were not created, for under the provisions of the Constitution there was to be no County Court in or for the county called the " City of St. Louis ;" and no new office of marshal was created, for the Constitution provides for no such office.

The argument involves the consideration of the question by whom are the county functions to be performed. They are not to be performed by a County Court, or its appointees,

for there is to be no County Court in the new county. They are evidently to be performed by the city authorities, acting for the State, where it is not otherwise expressly provided. It is " the city as enlarged " which is to " collect the State revenue, and perform all the functions in relation to the State in the same manner as if it were a county," etc. As the city is to do these things, it is necessary to do them through its own officers, and it is necessary to do them " in the same manner " as if it were a county. This is a part of the scheme furnished by the Constitution itself, and, of course, superior to all laws, special or general. It is the ground on which the freeholders were to build their super-structure.

They could no more have disregarded this than they could have disregarded the part of the scheme which abolishes the County Court, or the provision which directs that the city shall assume the existing county debt. The power is given, not merely to provide for the government of the city, but the city is required to say by what city officers the county functions shall be performed, where the Constitution does not, in terms or by necessary implication, otherwise provide. For instance, the State revenue within the city is to be collected. It is to be collected by city officers; by what city officers it was as clearly within the power of the freeholders to provide as it was within their power to provide who should collect the city revenue.

It was not within the power of the freeholders to provide that the sheriff should be a city officer, and should be elected at city elections, for reasons that have been given at length in connection with what was said, as to that office, in the opinion delivered in the case of *The State, etc.,* v. *Finn.* The Constitution did not abolish that office in connection with the city of St. Louis, as it abolished the County Court. Consequently, the office remained; and as it is a constitutional office, and the officer performs State functions, it was not within the scope of the duties of the freeholders to

destroy its character and make it merely a city office. The
duties of the sheriff, however, are not prescribed by the
Constitution. The general character of these duties is well
understood, and is a part of the history of our system of
law. But whether the sheriff shall attend upon all courts of
record in his county, and execute their process, has hereto-
fore been a matter of local regulation.

In St. Louis County, since the act of 1841, the sheriff of
St. Louis County has attended the Circuit Court and exe-
cuted the process; while the marshal of St. Louis County
has attended the St. Louis Criminal Court, the Probate
Court, and, since its establishment, the Court of Criminal
Correction, and executed the process of those courts.

The freeholders, in one form or another, undertook to pro-
vide that a city officer, the marshal, should attend upon
and execute the process of the St. Louis Criminal Court,
the Court of Criminal Correction, and the Probate Court.

In pursuance of the powers given them by the Constitu-
tion, the freeholders provided that the city marshal should
execute the process of these courts. The Legislature had
many years before taken certain functions from the sheriff
of St. Louis County and vested them in a county marshal,
and it would hardly be claimed that the Legislature had not
power to do this.

Now that the office of county marshal was abolished, the
freeholders merely undertook to say that the functions
which had previously been those of the county marshal
should devolve upon the city marshal, so far as the new
county was concerned. For this new county and the man-
ner in which its county relations to the State should be car-
ried out it was, as has been said, a part of their duty to
provide. Under the Constitution they had the power to do
so, and it was in the exercise of this power that these regu-
lations were made.

The Circuit Court of St. Louis County is a court created
by the Constitution, but the three courts to serve whose

process power is given to the marshal of the city of St. Louis by the Scheme and Charter are not constitutional courts. They had their origin in acts of the Legislature which applied merely to the county of St. Louis. They are special parts of the judicial system of the State. It may be doubtful how far the Legislature could take from the sheriff the function of attending upon the Circuit Court and executing its process. To do so might destroy that office, or impair it as a constitutional office; but where courts are merely creations of the Legislature their process is subject to legislative regulation and control. As the Legislature had power to provide that the marshal, and not the sheriff, should execute their process, so the freeholders, to whom was committed by the Constitution the power of providing for and enforcing the county relations of the new political body to the State, as well as the duty of framing a charter for its purely municipal government, had authority to declare that the process of these statutory courts, which were a peculiar part of the county system, should be executed within the new county by an officer of the city.

By the 24th section of the 9th article of the Constitution the jurisdiction of the courts of record within the old county, except that of the County Court, was to continue the same until otherwise provided; and as nothing is said as to who, in the division of the old county and the creation of new counties, is to execute the process of these courts, before executed by different officers, a provision on that subject may fairly be deemed by intendment from this section as coming within the scope of the legislative powers committed to the freeholders. It is said that section 18, article 9, of the Constitution provides "that no person shall at the same time fill two municipal offices, either in the same or different municipalities." As this is a general provision, its terms, if conflicting, must necessarily yield to those of the 23d section, which are special, and relate directly to the city of St. Louis. But between the 23d

section, as now interpreted, and the 18th there is no conflict. There is but one municipal office here involved,—that of marshal of the city of St. Louis. When, in obedience to the clause of the Constitution requiring the city to perform county functions, the city invests that officer with other duties than those which belong to the office proper, the city no more violates the section quoted from than it violates the provisions of that section when, in compliance with the direction to collect the State revenue, it allots that duty to the collector of the city.

The questions presented in this case relate merely to the performance by the respondent of the duties involved in attendance upon and executing the process of the St. Louis Criminal Court, the Court of Criminal Correction, and Probate Court. As, under the view taken, the freeholders, by virtue of the powers given them by the Constitution, had authority to provide that the marshal of the city should attend upon and execute the process of these courts, it is unnecessary to consider the recent acts of the General Assembly which have been brought into question by counsel. Though the statement shows that the respondent in this case has not entered upon his duties as marshal of the city of St. Louis, yet, as it appears that he has been duly elected to that office and has qualified, under the agreed statement of facts, it is to be considered that he has entered upon and is discharging his duties as a city marshal. Judgment will be entered for the respondent. All the judges concur.