THE STATE *ex rel.* ATTORNEY-GENERAL v. McKEE.

1. **Constables in the City of St. Louis:** THE SCHEME AND CHARTER: GENERAL WELFARE CLAUSE. It is doubtful if the board of freeholders who framed the scheme and charter for the separation and government of the city and county of St. Louis, intended, by the general welfare clause of the charter, to confer upon the city the power to pass any ordinance that would conflict with and repeal so much of the act of March 24th, 1875, concerning constables, as relates to the city of St. Louis; but if they did, they transcended the powers given them by article 9 of the Constitution. Ordinance No. 10,744, providing for the election of constables in the city of St. Louis, being in conflict with this act, is, therefore, void, and persons elected under it are not entitled to fill the office of constable.

2. **Constables** are State, not municipal, officers.

*Original Quo Warranto.*

*Castleman, Ewing & Pope* for relator.

*Frank K. Ryan* for respondents.

HENRY, J.—This is a proceeding by *quo warranto*, in

which it is alleged that defendants are unlawfully acting as constables in the first and seventeenth wards of the city of St. Louis. The defendants filed separate answers, which do not differ materially, alleging that, by an ordinance, No. 10,744, of the municipal assembly of the city of St. Louis, approved March 11th, 1878, the first and seventeenth wards of said city were constituted a district for the election of constables, and by the said ordinance it was provided, that, at the general election to be held in November, 1878, and every four years thereafter, three constables should be elected in and for said district, and that, at the general election in 1878, they were severally elected constables. To this answer there was a demurrer. The validity of the ordinance No. 10,744, is the only question to be determined. If the municipal assembly had authority to pass that ordinance, the defendants are entitled to the offices ; otherwise a judgment of ouster should be rendered against them.

An act of the General Assembly, approved March 24th, 1875, provided as follows : " Section 1. At the general election in the year 1878, and every four years thereafter, the qualified voters of the township of St. Louis, in said county, shall elect two constables for the township of St. Louis, outside of the limits of the city of St. Louis, and one for every other township in the county of St. Louis, and one constable for each ward in the city of St. Louis, and one for each additional ward, as the same may be created, whose residence shall be within the limits for which he may be elected by the qualified voters within said limits respectively. Section 2. All constables now in office, in the county of St. Louis, shall hold their respective offices until the general election, to be holden in the year 1878, and until their successors are duly elected and qualified." This statute was in force when ordinance No. 10,744 was adopted by the municipal assembly of the city of St. Louis, and if that assembly had authority, under the constitution of this State, to repeal the act of March 24th, 1875, so far as it applied to the city of St. Louis, the respondents were

duly elected, and are entitled to hold their offices.    Had the municipal assembly any such power?    Conceding that the charter conferred the power, was there anything in the constitution authorizing the freeholders to adopt a charter conferring such power upon the municipal assembly?

By the express provisions of the constitution, (section 20, article 9,) the scheme, when adopted, became the organic law of the county and city, and the charter, when adopted, became the organic law of the city, and, at the expiration of sixty days thereafter, took the place of and superseded the charter of St. Louis, and all amendments thereof, and all special laws relating to St. Louis county inconsistent with such scheme.    The scheme, under the constitution, could only provide for the enlargement of the boundaries of the city, the re-organization of the government of the county, and the adjustment of the relations between the city, thus enlarged, and the residue of St. Louis county. Under none of these heads can be classed the appointment or election of constables within the city of St. Louis.    All special laws relating to St. Louis county which are inconsistent with the scheme, were superseded, but the act of 1875, providing for the election of constables, is not inconsistent with anything which the scheme might constitutionally contain.    If the boundaries of the city were enlarged, the act of 1875 provided for the election of a constable in any new ward that might be created in the attached territory.    It is clear, therefore, that the ordinance in question cannot be upheld on the ground that the act of 1875 is in conflict with any provision in the scheme, which the freeholders had the right to insert in that instrument.

Was there any authority conferred upon them by the constitution to adopt a charter giving the municipal assembly the power to pass ordinance No. 10,744?    By section 23, of article 9, of the constitution, the charter and all amendments thereto, were required to be in harmony with the constitution and laws of the State and subject thereto. We have looked in vain for a provision of the constitution

giving to the freeholders the right to adopt a charter for the city, conferring upon the municipal assembly the power claimed for it by the respondents and asserted by the assembly in the adoption of the ordinance in question.

But we doubt if the charter attempts to confer the power claimed. Section 26, of article 3, of the charter relied upon by respondents, is as follows: "Finally, to pass all such ordinances, not inconsistent with the provisions of this charter, or the laws of the State, as may be expedient in maintaining the peace, good government, health and welfare of the city, its trade, commerce and manufactures." From this is inferred the power assumed by the municipal assembly to repeal a general law of the State, which specified the number of constables for each ward, and the time and mode of their election, &c. The city has ample means to maintain the peace and good order of the city by providing for a police force, and increasing it from time to time, but aside from that consideration, any ordinance looking to the maintenance of the peace, good government, health and welfare of the city, &c., by the express terms of the charter, must be consistent with the laws of the State. If the number of constables is insufficient, it is for the General Assembly to increase the number, and no serious inconvenience can result to the city in the meantime, because " every constable may appoint deputies," &c. Wag. Stat. § 7, p. 267.

The constitution provides that the city shall " collect the revenue, and perform all other functions in relation to the State in the same manner as if it were a county." It is argued that " it is one of the functions of a county in its relation to the State, to elect constables, and to supervise and regulate them, and generally to create the districts in which they are elected." There is no general law authorizing the county court of any county to provide for more than one constable in a township. If an old township be divided into two or more townships, then the general law applies, giving to each of said townships a constable. So

the city of St. Louis can make as many additional wards as may be deemed expedient, and there is a general law providing for the election of constables in such additional wards. The city of St. Louis is not a county. She collects the State revenue, and performs " all other functions in relation to the State, as if a county." § 23, art. 9. " Notwithstanding the provisions of this article, the General Assembly shall have the same power over the city and county of St. Louis that it has over other cities and counties of this State." § 25. The language of these and other sections that might be cited, is totally inconsistent with the idea that the city of St. Louis is one of the counties of the State. *State ex rel. Burden v. Walsh, ante,* p. 408. Would a general act with reference to the several counties of the State apply to the city of St. Louis? We think not. But if a county, what law authorizes a county to provide for the election of more constables than is authorized by the general law for any township in the county. The power of dividing townships into two or more election districts and precincts confided to the several county courts, is no authority for an increase by the county court of the number of constables in such township. The division of the township, as contemplated by the law, is for the convenience of voters, (Wag. Stat., § 4, p. 565,) and if the municipal assembly of the city of St. Louis may increase the number of constables by an ordinance under the general powers in the charter, &c., as may be expedient in maintaining the peace, &c., of the city, (§ 26, art. 3,) she may also increase the number of circuit judges, circuit clerks, or pass an ordinance similar to ordinance No. 10,744, in relation to any other State officer for the city of St. Louis.

The constable is not a city officer, he is a State officer. It is an office created by general law for every township in the State, and every ward in the city. He is a State officer in the same sense that sheriffs and clerks of courts of record are State officers, and that judges of inferior courts are State officers, although they can only discharge the

duties of their respective offices, within a limited territory and not throughout the State. We are of opinion that the facts stated by respondents in their return, do not constitute a reason why judgment of ouster should not be rendered against them, and, therefore, there will be a judgment as prayed in the petition. All concur.

JUDGMENT OF OUSTER.