STATE OF MISSOURI, EX REL. THE CIRCUIT ATTORNEY, *v.* JOHN FINN.

February 17, 1880.

8 341
123m402

1. The Legislature has the power to provide officers for the service of State courts, and may regulate their authority and duties.

2. The office of sheriff is a State office created by the Constitution for every county and territorial subdivision of the State which performs county functions towards the State.

3. The constitutional provision that no law shall contain more than one subject, which shall be clearly expressed in its title, is interpreted to require that the title shall give information of the general subject of the act, and that the act shall not contain provisions not pertaining to the general subject.

4. Courts will not declare a legislative enactment to be in conflict with the Constitution where, by adopting another equally admissible construction, its constitutionality can be upheld; *i.e.*, courts will always construe a law most favorably to its life and purpose.

5. The legislative act which provides that the sheriff of the city of St. Louis shall serve the process of the Probate Court, the Criminal Court, and the Court of Criminal Correction, is in terms sufficient to confer that right upon the sheriff, and is no interference with the chartered rights of the city of St. Louis, and does not repeal any provision of the charter intended to be permanent, or which concerns the municipal government.

6. The act does not violate the constitutional provision as to the subject of an act being expressed in its title; nor does it attempt to reënact any repealed laws by reference to their title; nor violate the constitutional provision as to amendments of the city charter of St. Louis; nor is it an act regulating the affairs of St. Louis; nor a local or special act within the meaning of the constitutional prohibitions on that subject.

7. The first section of the act constitutes a complete enactment authorizing the sheriff to serve the courts named in it, and if there were unconstitutional provisions in the other sections, they might be eliminated as not essentially connected with the main purpose of the act, and the first section would be sustained.

APPLICATION for *quo warranto*.

*Demurrer to answer overruled, and judgment for the respondent.*

HARRIS & JOY, for the relator.

E. T. FARISH, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

This is an information in the nature of a *quo warranto*, filed by the acting circuit attorney of the Eighth Judicial Circuit, to try the right of John Finn, the sheriff of the city of St. Louis, to execute process of the St. Louis Criminal Court. A similar information was at the same time filed to try the right of Finn, as sheriff, to execute process of the Probate Court of the city of St. Louis, and of the Court of Criminal Correction. In each case the answer filed was the same, *mutatis mutandis*, and the subsequent proceedings were the same. The two causes were argued and submitted together, and will be considered together.

The relator alleges that by the Constitution and the

Scheme and Charter, the office of marshal of the city of St. Louis exists; that it is by law the duty of the city marshal to execute all process of the St. Louis Criminal Court; that Mason was elected to that office at the April election, 1877, and qualified and entered upon the performance of his duties as city marshal, and until October 13, 1879, continued to perform those duties; that on the date last named, Finn intruded himself into the office of city marshal, and from that date until the filing of this information has, without any warrant of law, exercised the duties of that office and performed all the functions of marshal in the St. Louis Criminal Court.

The answer is to the effect that Finn, at the dates named, was sheriff of the city of St. Louis, and sets up as his sufficient warrant for exercising the functions of executive officer of the St. Louis Criminal Court, an act of the General Assembly of May 1, 1879 (Sess. Acts 1879, p. 40), which provides that all process of the St. Louis Circuit Court, Criminal Court, Court of Criminal Correction, and Probate Court shall be directed to and executed by the sheriff of that city, and that it shall be his duty to attend these courts, and to perform all duties heretofore enjoined upon the marshal of the city; also an act dated May 1, 1879 (Sess. Acts 1879, p. 39), amending an act entitled "An act to define and conform the laws of the State to sect. 23, Art. IX., of the Constitution; also an act dated April 29, 1879 (Sess. Acts 1879, p. 29), to repeal the act of May 2, 1877, relating to the office of marshal of the city of St. Louis; also an act dated April 29, 1879, repealing the act of May 2, 1877, in relation to final process from courts of record in St. Louis, and the duties of certain officers relative thereto.

The relator demurred to the answer. The question presented for our determination is whether, under the Constitution, the Scheme of Separation of the city and county, and the charter of the city of St. Louis, treated of in Art. IX., sect. 20, of the Constitution, and which were subsequently

adopted by the people, and which went into force October 22, 1876, and the acts of the General Assembly set out in the answer, the marshal or the sheriff of the city of St. Louis is the proper person to execute process of the three courts named in these two informations.

The Constitution of 1875 authorized a board of free-holders of the city and county of. St. Louis to " prepare a scheme for the enlargement and definition of the boundaries of the city, the reorganization of the government of the county, the adjustment of the relations between the city thus enlarged and the residue of St. Louis County, and the government of the city thus enlarged by a charter in harmony with and subject to the Constitution and laws of Missouri " (Art. IX., sect. 20), and provided that the city shall * * * " collect the State revenue and perform all other functions in relation to the State in the same manner as if it were a county in the Constitution defined ; and the residue of the county shall remain a legal county." Sect. 23. The definition of a county in the Constitution is " a legal subdivision of the State." Art. X., sect. 1.

The office of sheriff exists in Missouri by constitutional provision. At common law the sheriff served the process of the State. Under our laws he executes writs issued in the name of the State, though directed to him by the courts of another county. At the date of the adoption of the Scheme and Charter, there existed in St. Louis, and had existed there for many years, a Probate Court, Criminal Court, and Court of Criminal Correction. These were all State courts ; but they were not all expressly provided for by the Constitution, as were the Circuit Courts and the County Courts (Const. 1820, Art. V., sect. 1 ; Const. 1865, Art. VI., sect. 23), and they were created by the Legislature alone, under the general power given to the Legislature to establish from time to time inferior tribunals. The Legislature had provided that the process of these three courts should be served, not by the sheriff, but by an' officer called the

county marshal; and in 1876 the process of these courts had been for many years served by this officer. The framers of the Scheme of Separation provided (sect. 6) for an officer to be called the marshal of the city of St. Louis, who was to discharge, under the altered condition of affairs, within the extended limits of the city of St. Louis, the duties that had heretofore been discharged by the county marshal.

We held in *The State ex rel. v. Mason*, 4 Mo. App. 377, that, the office of county marshal being abolished, it was competent for the freeholders to provide that the duties theretofore pertaining to that office should devolve upon the city marshal. The Constitution provided (sect. 24) that the jurisdiction of these three courts should continue as before the adoption of the Scheme and Charter, until otherwise provided by law. Under these circumstances, even if it was not absolutely necessary, it was at least obviously fitting and congruous that the Scheme should contain some provision as to the service of the process of these courts. The office of sheriff of St. Louis must at once come into existence, as soon as the legal subdivision of the State called the city of St. Louis was formed. The laws in force as to these courts provided that their process should not be served by the sheriff. The freeholders were surely under no obligation to provide that the sheriff of the city of St. Louis should become the executive officer of these courts. It was obvious that some express provision should be made, were it only to remove all ground for doubt or difficulty in so important a matter; and the provision actually made, creating the office of city marshal to replace the old county marshal, and providing that he should discharge within the city the duties formerly discharged by the county marshal, was one which it was competent for the freeholders to insert in the Scheme, in providing for the reorganization of the respective governments of the city and county and adjusting their relations. In divesting the city of the bur-

den of a double government through city and county organizations, certain offices and their functions were necessarily abolished, and when one of these officers, as in the case of the marshal, was an officer specially appointed to serve the process of certain courts which would continue to exist, with the same jurisdiction, extending, until the Legislature should adjust the matter, over the same territorial limits of the old city and county, it was manifestly intended that the framers of the Scheme should provide for the gap that would be left, until such time at least as there should be the further legislation in regard to these courts which the Constitution contemplated, and of which it speaks in sect. 24 of the article devoted to this subject.

There is nothing in the case of *The State ex rel.* v. *McKee*, 69 Mo. 504, which was decided by the Supreme Court after our decision in *The State ex rel.* v. *Mason*, contrary to what is decided by this court in *The State ex rel.* v. *Mason*, or to what is said above. In *The State ex rel.* v. *McKee*, the Supreme Court holds that it was not competent for the city of St. Louis, under the new charter, to provide by ordinance for districting the city for the election of constables; that the election of constables and their number is regulated by the act of March 24, 1875, which provides that there shall be one constable for each ward of St. Louis, and one for each new ward, as new wards are created, two for St. Louis Township, and one for every other township in the county; and that the municipal ordinance in question would, if valid, have the effect of repealing these provisions of the general law on the subject of constables; that the constitutional provision for the Scheme and Charter did not give to the freeholders power to adopt a charter conferring any such power on the Municipal Assembly; that the charter itself does not profess to give such power to the Municipal Assembly; and that the act of 1875 is not in conflict with any provisions of the Scheme which the freeholders had the right to insert in that

instrument.  The office of constable, the Supreme Court says in this opinion, is not a city office, but a State office, created by general law ; and the intimation is, that the freeholders, in the Scheme and Charter, had no right to prescribe the number of constables within the territorial limits over which the Scheme and Charter extended, or to regulate their duties, or to give power to the city to do so.

The office of sheriff is, in like manner, a State office, recognized in the Constitution, and created for every county in the State and for all territorial subdivisions of the State which perform county functions towards the State.  It seems to be peculiarly the province of the State Legislature to provide officers for the service of the State courts.  While the General Assembly could not, perhaps, destroy the office of sheriff, by taking from that officer the duty of serving process of the Circuit Courts, they manifestly have the power of directing that he shall serve the process of any State courts within his bailiwick.  The sheriff of St. Louis County is a State officer, differing in his functions in no essential respect from any other sheriff in the State.  The rules of law generally applicable to sheriffs apply to him, and he does not become a city officer because the territorial subdivision of the State constituting his bailiwick is called a city rather than a county.  It was said in *The State ex rel.* v. *Mason*, that where courts are merely the creatures of the Legislature their process is subject to legislative regulation and control.

We see nothing in the Constitution of 1875 which seems to be intended to deprive the General Assembly of this control over the process of the State courts of inferior jurisdiction in what was the county of St. Louis.  It was the plain intention of that instrument that the framers of the Scheme should make some provision, as they did, for the service within the enlarged limits of St. Louis of the process of the courts, since the Scheme must abrogate the offices of those serving process of courts of record within those territorial limits ; but it does not follow that the control of the Legisla-

ture over the subject was to cease. Any provision of the Scheme for the service of process of State courts was necessarily temporary, arising *ex necessitate rei;* but a modification by the Legislature of such provisions of the Scheme is not in conflict with the objects, or with any of the essential provisions of the Scheme and Charter themselves. Such legislation is no interference on the part of the State Legislature with the city government, and is not inconsistent with the purpose of " detaching the territory comprised within the enlarged limits of the city of St. Louis from the county of St. Louis, thereby leaving it a city proper, divested of all county government, the functions in relation to the State previously performed therein by the county government being transferred to the government of the city," to quote the language used by the Supreme Court in *The State ex rel.* v. *Walsh*, 69 Mo. 408. The city is to collect the State revenue (sect. 23), and this must necessarily be done by city officers ; but the Constitution does not provide that the city shall cause the process of the State to be served through officers of the city. The city is " to perform all other functions in relation to the State in the same manner as if it were a county." This does not mean that the city must appoint city officers to serve State process, and that officers other than the sheriff, created for that purpose, may not be abolished by the State Legislature ; for, in *The State ex rel.* v. *McKee,* cited above, the Supreme Court decides that the State, and not the city, is to provide for the election and duties of constables and their number within the territorial limits of the city of St. Louis.

Whilst, then, it was competent for the freeholders to meet the existing emergency by providing that the city marshal should serve the process of these courts, it was competent for the General Assembly to provide otherwise ; and such a provision is no interference with the chartered rights of the city of St. Louis, nor is it a repeal of any purely municipal regulation of the charter or of any provision of that in-

strument that concerns the government of the city, or which was intended to be permanent in its character. It is a legitimate exercise of the undoubted power of the Legislature to provide by law for the service of process in State courts.

It remains to be seen whether the acts pleaded, or any of them, are in other respects valid, and whether they have the effect of conferring upon the respondent the rights which he claims under them.  As to this, the language of the act of May 1st, providing for the service of the process of these three courts, is plainly sufficient to constitute the sheriff of the city of St. Louis the proper officer to serve the process of these courts.

The first section of the act provides that " all process of the Circuit Court of the county of St Louis, the St. Louis Criminal Court, the St. Louis Court of Criminal Correction, and of the Probate Court of the county of St. Louis, shall be directed to and be executed by the sheriff of said city." The second section says that " it shall be the duty of the sheriff of the city of St. Louis to attend said courts, and do and perform all the acts heretofore enjoined upon, and required by law to be performed by, the marshal of St. Louis County, and now devolved on the marshal of the city of St. Louis." The next two sections provide that the fees shall be the same as were the fees of the county marshal, and shall be taxed and collected as are other costs, and that all acts and parts of acts inconsistent with this act are repealed.  The title of the act is, " An act in relation to courts of record in the city of St. Louis, and imposing additional duties upon the sheriff in relation thereto." The Constitution provides that no law shall contain more than one subject, which shall be clearly expressed in its title. It is contended that this law violates this constitutional provision. There is, however, nothing whatever in this objection. The constitutional provision is interpreted to require that the title shall give information of the general subject of

the act, and that the act shall not contain provisions in no wise pertaining to the general subject. *In re Burris*, 66 Mo. 446.

The relator insists that the second section of the act provides that the sheriff shall discharge all the duties which, by various laws no longer in force, were required of the marshal of the county of St. Louis, and thus attempts to reenact all those laws, contrary to sect 33 of Art. IV. of the Constitution, which provides that no act shall be revived by mere reference to its title. The law, however, devolves upon the sheriff only those duties of the county marshal which the Scheme and Charter imposed upon the city marshal. We do not think it is susceptible of the interpretation which the relator would give to it. It is enough, however, that it is susceptible of the interpretation which we have given to it. Courts will not declare an act to be in conflict with the Constitution where, by adopting another equally admissible construction, its constitutionality can be upheld. *Lowrey v. Rainwater*, 3 Mo. App. 563.

Neither can this law, by any fair interpretation, be regarded as an unauthorized interference with and amendment by the Legislature of the State of the city charter. The power to amend the charter can be exercised only as provided in the Constitution (Art. IX., sects. 22, 23), at intervals of two years, and by the qualified voters of the city. In all matters of local concern the people of St. Louis, under the Constitution, are governed by their charter, which cannot be amended against their will by any legislative enactment. The duties of the city marshal, however, under the charter, were not of a municipal character; they consisted in the service of the process of, and the attendance upon, the three courts named, the summoning of jurors for the criminal courts, and the service of summons in street-opening proceedings. As street-opening proceedings are under the existing law conducted in the Circuit Court, so far as service upon the parties is concerned, and

as the sheriff is the proper officer of the Circuit Court, it may be doubted whether it was competent for the freeholders to provide that any process of that court should be served by another officer. So far as the provision in regard to fees is concerned, as the Constitution (Art. IX., sect. 13) limits the amount of compensation which the sheriff is to receive to $10,000 a year, and requires him to make quarterly returns of all fees received by him, it does not appear that any provision of the city charter is changed by that. But, however this may be, and if the second and third sections of the act were in violation of constitutional provisions, there would still remain in the first section a complete enactment capable of being carried out according to the intention of the Legislature, and not in conflict with the organic law of the State. The whole act could not be rejected because of one or two unconstitutional provisions, which might be readily eliminated, and which are not so connected with the main purpose of the act that it must be presumed that the Legislature would not have passed the one without the other. *In re Jilz*, 3 Mo. App. 247; *The State* v. *Clarke*, 54 Mo. 17; *County Court* v. *Griswold*, 58 Mo. 175. The first section alone sustains the respondent's defence.

It is also contended that the law violates the limitations set on the power of the Legislature by Art. IV., sect. 53, of the Constitution, which provides that " the General Assembly shall not pass any local or special law regulating the affairs of counties, cities, townships, wards, or school districts ;" and that in all other cases where a general law can be made applicable, no local or special law shall be enacted ; and that no local or special law shall be passed unless notice of the intention to apply for the same shall have been published in the locality where the matter or thing to be affected may be situated, at least thirty days prior to the introduction of such bill.

From what has been already said, it appears that we do

not regard this as an act regulating the affairs of the city of St. Louis. The affairs of the city of St. Louis are regulated by its charter, and it is not competent for the Legislature to modify the charter of the city by repealing any provision of the city charter having reference to the affairs of the city, and not out of harmony with the Constitution and laws of the State. The matter of serving the process of these courts is an affair of the State — a matter for State regulation, and not a matter for municipal regulation, or specially concerning the municipality of the city of St. Louis. It is needless to repeat what we have said as to the merely temporary and accidental character of the particular provision of the Scheme which this law, in providing for the service of process of State courts, inevitably repeals.

A general law could not have been made applicable. The law itself merely brings the courts of St. Louis under the general law of the State, which is that the courts of each legal subdivision of the State called a county shall be served by the sheriff of such county.

Neither was this law a local and special law within the constitutional provision requiring notice to be published in the locality to be affected; because, as we have seen, the constitutional provision for the framing of the Scheme and Charter contemplated the expediency at least, if not the absolute necessity, of subsequent legislation of this character to provide for the service of the courts of the State within the territorial limits of St. Louis, the office of marshal of these courts being unavoidably abolished by the adoption of the Scheme and Charter. The case falls within the reasoning in *The State ex rel.* v. *Walton*, 7 Mo. App. 562, and *The State ex rel.* v. *Shields*, 4 Mo. App. 259; *The State to use* v. *Aubuchon*, *ante*, p. 321.

If it was competent for the General Assembly to pass this law, and no constitutional provision has been violated in doing so, it is unnecessary to examine the provisions or the constitutionality of the other statutes pleaded by the re-

spondent, as the provisions of this law are a sufficient justification of the ouster of which the relator complains.

. It follows that the demurrer to the answer of the respondent must be overruled. And as the acts pleaded by the respondent are public acts, and the facts set up by him those of which we take judicial notice, and as the answer, if true, constitutes a complete defence, it remains only to enter judgment for the respondent, which will accordingly be done. Judge LEWIS is absent; Judge HAYDEN concurs.