## THE STATE v. DIERBERGER, *Appellant.*

1. **Deputy Constable**: FAILURE TO FILE APPOINTMENT WITH COUNTY CLERK. The provision of Revised Statutes, section 652, requiring the appointment of one as a deputy constable to be filed in the office of the county clerk of the county in which he is appointed is directory, and the failure to file his appointment does not deprive him of the right to claim, on a trial for a homicide committed by him, that he was a deputy constable.

2. **Homicide**: DEPUTY CONSTABLE: OFFICER DE FACTO: CONSTITUTION. Under section 6, article 14, of the constitution, requiring all officers under the authority of the state to take an oath of office, a deputy constable regularly appointed is not an officer *de jure*, but is one *de facto*, and others have no right to resist him in the discharge of the duties of deputy constable; and when such officer is on trial under an indictment for the murder of one who had resisted him while attempting to make an arrest, he should be treated as an officer, and the instructions of the court should proceed on that theory.

*Appeal from the St. Louis Criminal Court.*—HON. G. S. VAN WAGONER, Judge.

REVERSED AND REMANDED.

*Charles P. Johnson, John D. Johnson* and *C. C. Simmons* for appellant.

The eighth instruction, given by the court for the

state, and which told the jury that the defendant at the time of the homicide was not a deputy constable under the laws of the state, was erroneous. R. S., sec. 652. The statute requiring the appointment of a deputy constable to be registered, is only directory, and. does not affect the validity of his acts. *State v. Muir*, 20 Mo. 303; *State v. Underwood*, 75 Mo. 230. Defendant was both *de facto* and *de jure* a deputy constable, and it was not only his right, but his duty to suppress the disturbance; and if it constituted a criminal misdemeanor, to arrest the offenders at once. *State v. Carrol*, 38 Conn. 449; 4 Blackstone Com. 145-6; 1 Chitty's Crim. Law, 20, 23; 1 Bishop's Crim. Proc., secs. 214, 849; *Com. v. Deacon*, 8 S. & R. 48-9; *Burris v. Erben*, 40 N. Y. 463; *Donovan v. Jones*, 36 N. H. 246; *Taylor v. Strong*, 8 Wend. 384; *Main v. McCarty*, 15 Ill. 441. When an affray or other misdemeanor is committed in the presence of the officer, if he does not arrest the offender at the time, but goes away and returns after the entire transaction is over with no danger of its renewal, he is then too late to make the arrest without a warrant. But the arrest need not be instant. It may be made at a reasonable time and fit opportunity, or, as it has been said, on quick pursuit. 1 Bish. Crim. Proc., sec. 183; *State v. Underwood*, 75 Mo. 230; *State v. Ward*, 14 Mo. 138.

*B. G. Boone*, Attorney General, for the state.

(1) Defendant was not a deputy constable within the meaning of the law, and as such, authorized to make arrests. He was never sworn in as a deputy. His appointment had not been registered. He had never exercised or attempted to exercise the duties of the office, and the appointment is repudiated by the constable, who says he only gave defendant the appointment upon repeated requests so to do, and never intended him to act as deputy. (2) As a general principle, officers of the law,

when their authority to arrest or imprison is resisted, will be justified in opposing force to force, even if death should be the consequence ; but they should not come to extremities upon slight interruptions without reasonable necessity. If an officer should kill when no resistance is made, it would be murder; and the same rule obtains with equal force if an officer kill after the resistance is over and the necessity has ceased. 1 East P. C. 297 ; 1 Whar. Crim. Law [ 8 Ed.] sec. 402 ; 6 Br. Crim., C., D. & P. 35. (3) An officer in arresting one for a misdemeanor is not justified in killing, unless his life is in peril. The case then becomes one of self defence. 1 Whar. Crim. Law [8 Ed.] secs. 404, 414 ; *State v. Mc-Nally*, 2 West. Rep. 481 ; s. c., 87 Mo. 644. (4) And any arrest, not unlawful in itself, may be performed in a manner so criminal and improper, or by authority so defective as to make the party, who, while performing it causes death, guilty of murder. 1 Whar. Crim. Law [ 8 Ed.] sec. 408, and cases cited. (5) It is exceedingly doubtful whether a constable can confer authority upon another to execute criminal process unless he complies with the substantial requirements of the law regulating the appointment of deputies. *Saulsbury v. Commonwealth*, 1 Ky. L. J. 181 ; 3 Crim. Law Mag. 111. (6) If defendant was an officer, and was attempting to arrest Jackson for an affray, or Horne, the deceased, for resisting his arrest, this does not justify or even extenuate the crime. Jackson and Horne's offences were only misdemeanors. R. S., secs. 1437, 1438, 1509. While it is the duty of sheriffs and constables to preserve the peace, they are possessed of no authority to punish for a breach of it. Murfree on Sheriffs, sec. 1164; Crocker on Sheriffs and Constables, sec. 48.

BLACK, J.—The defendant was tried in the St. Louis criminal court on an indictment for murder in the first

degree and was convicted of murder in the second degree.

The evidence shows that Dierberger, the defendant, his wife and sister, got into a street car in St. Louis. The deceased, John Horne, his wife, and Joseph Jackson, got on the same car. It was about twelve o'clock at night, and the parties were going to their respective homes. The car was well filled with passengers, and Horne and Jackson, who, the evidence tends to show, were somewhat under the influence of intoxicants, went to the front platform and eventually got into a dispute with the driver, which resulted in the use of boisterous language, and a scuffle between the driver and Jackson. The conductor, followed by the defendant, went from the rear to the front of the car, and when the door was opened, the driver, Jackson, and perhaps Horne, fell into the aisle of the car. There is evidence that the defendant went to the front platform first to stop the car, which by this time was going at a rapid rate of speed. At all events, immediately, and while the parties were all in the car, defendant stepped up to Jackson and said he was an officer and would arrest him, and at the same time took hold of Jackson, who said, "If you are an officer I will go with you." Horne then said, "Don't go Jackson, he is no officer." There is also evidence that Horne said, "I don't give a damn what you are, you can't take him." Other words passed between Horne and the defendant, when the latter drew a pistol, but at the request of the conductor, put it away. It is said that in less than half a minute defendant pressed Horne to the front of the car and fired two shots, one of which killed Horne. Again, there is evidence that Jackson hit defendant when Horne came to Jackson's aid, and a fight or scuffle ensued, in which defendant received bruises and cuts about the face, and in which Horne was killed by one of two shots fired by defendant.

The defendant put in evidence a written and formal

appointment as deputy constable, dated April 21, 1883, and signed by John F. C. Frese, constable of the thirteenth district. It is conceded this appointment was not filed with the city register, who performs the duties of a county clerk, and that defendant had taken no official oath. For the state the constable testified that he gave defendant the appointment after repeated requests therefor, and that no more was said at that time. He also stated, over objections, that he did not report the appointment, and that he did not intend to have defendant act as deputy, but it is not claimed that this intention was communicated to defendant. The court, among other instructions, told the jury in substance that, under the evidence, defendant was not a deputy constable under the laws of this state ; and that a private person who assumes to act as an officer of the law, does so at his peril, and although the jury might believe that defendant in good faith believed he was a deputy constable, yet such belief did not authorize him to act as such deputy, nor shield him from unlawful acts.

The statute, section 652, gives every constable power to appoint deputies, for whose conduct he shall be answerable, and provides that the appointment shall be filed in the office of the county clerk. It was said in *State to use of Moutrey v. Muir*, 20 Mo. 303, that this statute requiring the appointment to be filed was directory, though that was a suit against the constable and his sureties for the delinquencies of the deputy. In the later case of *State v. Underwood*, 75 Mo. 230, it was also said that the only object the law has in requiring the appointment to be filed in the office of the county clerk, is to preserve the record evidence of the fact of such appointment having been made. In that case the defendant was indicted for killing the deputy while attempting to arrest defendant for another alleged crime. The principle of those cases is applicable here, and the

failure to file the appointment cannot deprive the defendant of his right to say that he was a deputy constable.

The more difficult question arises from the failure of the defendant to take an oath of office. Here it may be stated that the uncommunicated intentions of the constable had nothing to do with the case, and the evidence in that behalf should have been excluded. The defendant accepted the appointment for what it purported to be, and his right to act as a deputy must be tested· by it and the failure to take an oath of office. The statute, section 3887, provides that a deputy sheriff shall file his appointment, with the oath endorsed thereon, with the clerk of the circuit court, and as no such statutory provision is made, either as to the oath or its preservation, with respect to deputy constables, the opinion seems to prevail, to some extent, at least, that the latter are not required to take an oath. But section 6, article 14, of the constitution requires all officers under the authority of the state, before entering upon the discharge of the duties of their respective offices, to take and subscribe an· oath or affirmation to support the constitution and to faithfully demean themselves in office. Clearly the deputy constable is an officer under the authority of the state. He should take the oath, and until he does so, he is not an officer *de jure*; and the further question is, was he an officer *de facto*.

In *State v. Carroll*, 38 Conn. 449, the conclusion among others is reached, that one is an officer *de facto*, where the duties of the office are exercised under color of a known and valid appointment or election, but where the officer has failed to conform to some precedent, requirement, or condition, as to take an oath, or give a bond. So the acts of a justice of the peace were held to· be valid as to third persons, though he had not taken an oath which the statute made a condition precedent to

The State v. Dierberger.

his right to act as such. *Murgate Pier Co. v. Hannan,* 3 Barn. & Ald. 265. The same principle applies in respect to a ministerial officer, as where a deputy constable or sheriff fails to take the oath of office. *Lisbon v. Bow,* 10 N. H. 167; *Merrill v. Palmer,* 13 N. H. 184.

The act of the defendant here in question was probably his first act as deputy, but we do not see how that can make any difference, for the constable had the undoubted right to make the appointment, and the appointment was in every way a good, formal and valid appointment. The appointment made and constituted him a deputy; and though he failed to take the oath he was an officer *de facto.* The principle of law is well settled that the acts of such an officer are as effectual when they concern the public, or the rights of third persons, as though they were officers *de jure.* 21 Am. Dec. 213; 19 Am. Dec. 63, and notes; 50 Mo. 593; 72 Mo. 189.

Generally, where an officer sues or defends in his own right, as a public officer, it is not sufficient that he be merely an officer *de facto,* but to do this he must be an officer *de jure. People v. Weber,* 89 Ill. 348; *Patterson v. Miller,* 2 Met. (Ky.) 493; *Turner et al. v. Keller et al.,* 38 Mo. 332. It has been said, as to an officer *de facto,* that the office is void as to the officer himself, though valid as to strangers.

In *People v. Hopson et al.,* 1 Denio, 575, where the defendants were indicted for resisting a constable in the execution of process which ran in favor of Avery and against said Hopson, the defendants offered to prove that the constable had never taken the oath of office, nor given security required by law; and so was not a constable. As to this offer the court said: " The evidence would be proper if Lascells ( the constable ), instead of the people, was the party complaining of an injury. If he were suing to recover damages for the assault, it would probably be a good answer to the action that he was not a legal officer, but a wrong doer,

who might be resisted. And clearly he cannot recover fees, or set up any right of property on the ground that he is an officer *de facto*, unless he is an officer *de jure* * * * . But it is equally well settled that the acts of an officer *de facto*, though his title may be bad, are valid so far as they concern the public, or rights of third persons who have an interest in the things done. Society could hardly exist without such a rule * * * . The people are prosecuting for a breach of the public peace; and it is enough that Lascells was an officer *de facto*, having color of lawful authority. The rights of the creditor, the due administration of justice, and the good order of society, all concur in requiring that he should be respected as an officer until his title has been set aside by due process of law." See also, to the same effect, *Heath v. State*, 36 Ala. 273. Bishop says the better opinion is that third persons may be indicted for resisting a *de facto* officer. 1 Bish. on Crim. Law [8 Ed.] sec. 464. Wharton, in making reference to this current of authority, says the rule ought not to be extended to cases where the object is to test the right of the party resisted to hold office. Whar. on Crim. Law [8 Ed.] sec. 648.

These authorities show that Horne, and indeed, Jackson, had no right to resist defendant, when in the performance of the legitimate duties of a constable, and would be liable to an indictment for so doing. This being so, it is difficult to see why the defendant may not say that he was an officer *de facto*, and be entitled to protection to the extent that others were bound to respect his official character. It can hardly be said that the state resorts to this proceeding to test the right of the defendant to perform the functions of a deputy constable, when there are so many other more appropriate proceedings at hand; but it may rather be said the state here seeks to punish him for doing that which he had no right to do, though an officer he was. The question.

is by no means free from doubt, but we conclude the defendant should be treated in this case as an officer, and the instructions should proceed upon the theory that he was one. There seems to be no doubt but the defendant believed he was a deputy constable by right, in all respects, and the conclusion reached we believe to be in the interest of good order.

The judgment is reversed, and the cause remanded for trial *de novo*. All concur.