THE STATE *ex rel.* BLAKEMORE V. ROMBAUER *et al.,*
    *Judges of the St. Louis Court of Appeals.*

1.  **Constitution:** TITLE TO OFFICE: JURISDICTION OF SUPREME
    COURT. A case involving the right to the office of clerk of a cir-
    cuit court comes within the meaning of the clause of the constitu-
    tion (art. 6, sec. 12) conferring appellate jurisdiction on the
    supreme court in cases involving "the title to any office under
    this state."

2.  **Courts of Appeals:** JURISDICTION OF ORIGINAL WRITS. The
    courts of appeals under the amendment of 1884 to the constitution
    (R. S. 1889, pp. 87, 88) have no original jurisdiction, by virtue of
    their power to hear and determine original writs, to determine
    controversies over which the supreme court has appellate juris-
    diction.

3.  ———: ———. The jurisdiction of the courts of appeal, original
    as well as appellate, is confined under said amendment to those
    cases the subject-matter of which is not within the appellate juris-
    diction of the supreme court.

*Prohibition.*

WRIT AWARDED.

*James Carr* with *Lee & Ellis* for relator.

(1) The original jurisdiction conferred on the St.
Louis court of appeals by the twelfth section of the
seventh article of the constitution to issue writs of *quo
warranto,* and to hear and determine the same, was
abrogated by the amendment to the constitution of
1884. One of two things is true: If the St. Louis
court of appeals had jurisdiction, then the relator was
entitled on his application to an appeal to this court to
have his case reviewed; but if it had no jurisdiction
then the relator was not entitled to an appeal, and he
is entitled to a writ of prohibition. *Mastin v. Sloan,*
98 Mo. 252; *Campbell v. Court of Appeals,* 97 Mo. 276.

(2) Moreover, in this proceeding the construction of the constitution was involved in the particulars hereinbefore stated. The relator has a right, under the constitution and amendment, to have the supreme court construe and pass upon said questions. *State ex rel. Campbell v. St. Louis Court of Appeals*, 97 Mo. 276; *State ex rel. West v. Francis*, 95 Mo. 24. (3) Again, this case involves the "title to an office under this state." Const., sec. 12, art. 6. This clearly means a case where the party holds the office in question under the statutes of this state, in contradistinction to a party who holds an office under a municipality or the ordinances thereof.

*Hough & Hough* for respondents.

(1) It may well be doubted whether the office of clerk of the circuit court is "an office under this state" within the meaning of section 12, of article 6, of the constitution. Was it not intended by the language in the constitution to refer to cases in which the title to a state office was involved? *State v. Spencer*, 91 Mo. 206; *State, etc., v. Board of Health*, 90 Mo. 169; *State ex rel. v. Dillon*, 90 Mo. 229. (2) At all events under the grant of power to the St. Louis court of appeals in the twelfth section of article 6 of the constitution that court has the right to hear and determine *quo warranto* proceedings and hence necessarily has the power to determine any question which may arise in such proceeding whether it involves the construction of the constitution or the title to a state office. If the St. Louis court of appeals has no jurisdiction to determine a *quo warranto* proceeding involving questions which when originally raised in the circuit courts of the state would bring such cause within the appellate jurisdiction of the supreme court, then the St. Louis court of appeals would likewise have no power to issue writs of *habeas*

*corpus* and determine proceedings thereunder when a constitutional question is involved. (3) The St. Louis court of appeals has authority since the adoption of the amendment of 1884 to issue writs of *habeas corpus*, *quo warranto*, etc. *Clarkson v. Court of Appeals*, 88 Mo. 137.

BLACK, J.—The history of this case is as follows: William Bragg was the duly elected and qualified clerk of the circuit court of Dunklin county, having been elected for four years from and after the first day of January, 1887. On the sixth of December, 1888, the judge of the circuit court suspended Bragg for alleged misdemeanors in office, and at the same time appointed James B. Blakemore temporary clerk.

Informations were duly filed in the circuit court charging Bragg with the alleged misdemeanors, but before they came on for trial he resigned. The governor accepted the resignation, and on the twenty-second of January, 1889, appointed Robert F. Sanders clerk to fill the vacancy. Blakemore, who then discharged the duties of circuit clerk under the appointment made by the circuit judge, refused to surrender the office to Sanders; and, thereupon, the latter commenced a proceeding by *quo warranto* in the St. Louis court of appeals to oust Blakemore. After due consideration that court gave judgment of ouster, and was about to issue a writ to carry into effect the judgment, when Blakemore applied to this court for a writ of prohibition, upon consideration of which we issued an order to show cause. The case is now before us on a return made by the judges of the court of appeals to that order.

The ultimate question for our determination is, whether the St. Louis court of appeals had original jurisdiction to hear and determine the case in *quo warranto*, commenced in that court.

Sanders, who was the relator in that case, claimed the office from the time intervening between the resignation of Bragg and the next general election under and by virtue of the appointment made by the governor; and section 1964 of the Revised Statutes, 1889, is relied upon as giving the governor the right to make the appointment. Blakemore, the respondent in that case, claimed that his appointment made by the circuit judge continued until the election of Bragg's successor in office; and he founds this claim on section 1979 and certain sections of the constitution. In our opinion the sections of the statute just mentioned must determine which of the parties had a legal right to hold the office. The controversy was, however, one within that clause of the twelfth section of article 6 of the constitution of 1875, which gives to this court appellate jurisdiction from the St. Louis court of appeals in all cases "involving the title to any office under this state." It is true that, by several rulings of this court, the circuit clerk would not be a state officer within the meaning of the other clause of the same section which speaks of cases where "any state officer is a party." *State ex rel. Holmes v. Dillon*, 90 Mo. 229; *State ex rel. Bender v. Spencer*, 91 Mo. 206. The ruling in those cases was placed upon the ground that the words "state officer" were used in a popular sense and included only those officers whose duties are coextensive with the boundaries of the state, and other sections of the constitution are cited in support of the ruling which speak of state officers and of county officers.

But the language of the clause now under consideration is different. It is not unlike that of section 6, article 14, which provides that all officers, both civil and military, "under the authority of this state," shall take the prescribed oath of office; and we have held that a deputy constable should take that oath. *State v. Dierberger*, 90 Mo. 369. See, also, *State ex rel. Owens v. Draper*, 45 Mo. 355. How can it be said a clerk of

the circuit court, or a sheriff, holds the title to his office under the county in which elected? If the title to the office of such a clerk is not a title to an office under this state, then it is difficult to see what meaning can be given to the words of the clause in question.

The quo warranto proceeding in the court of appeals, we conclude, was one of the cases specified in section 12, article 6, of the constitution of 1875. That section established the St. Louis court of appeals with territorial jurisdiction coextensive with the city of St. Louis and the three named counties, and then provides:

"Said court shall have power to issue writs of habeas corpus, quo warranto, mandamus, certiorari and other original remedial writs, and to hear and determine the same, and shall have a superintending control over all inferior courts of record in said counties. Appeals shall lie from the decisions of the St. Louis court of appeals to the supreme court, and writs of error may issue from the supreme court to said court, in the following cases only: In all cases where the amount in dispute, exclusive of costs, exceeds the sum of twenty-five hundred dollars; in cases involving the construction of the constitution of the United States, or of this state; in cases where the validity of a treaty or statute of, or authority exercised under, the United States is drawn in question; in cases involving the construction of the revenue laws of this state, or the title to any office under this state; in cases involving title to real estate; in cases where a county or other political subdivision of the state or any state officer is a party, and in all cases of felony."

As the law thus stood there can be no doubt but the court of appeals had original jurisdiction to hear and determine writs of quo warranto, though the suit involved the title to an office under this state; but in such a case an appeal would lie from the judgment therein to this, the supreme court. It remains to be seen whether the amendment adopted in November,

1884, deprived the court of appeals of its original juris-
diction in such a case.

The first amendatory section extends the jurisdic-
tion of the St. Louis court of appeals over about one-
half of the counties in the state. The second creates
the Kansas City court of appeals with territorial juris-
diction over the remaining counties; and the fourth
gives the last-named court the powers and jurisdiction
of the former. The other material sections are:

"Sec. 5. In all causes or proceedings reviewable
by the supreme court, writs of error shall run from the
supreme court directly to the circuit courts and to
courts having the jurisdiction pertaining to circuit
courts, and, in all such causes or proceedings, appeals
shall lie from such trial courts directly to the supreme
court, and the supreme court shall have exclusive juris-
diction of such writs of error and appeals, and shall in
all such cases exclusively exercise superintending con-
trol over such trial courts."

"Sec. 8. The supreme court shall have superin-
tending control over the courts of appeals by *mandamus*,
prohibition and *certiorari*."

"Sec. 11. All provisions of the constitution of
this state, and all laws of this state which are incon-
sistent with this amendment, shall, so far as inconsistent,
upon its adoption, be forever rescinded and of no
effect."

The amendment made some changes in the organic law
which are so obvious as to require no more than a statement
of them; that is to say: *First.* The cases enumerated in
section 12 of article 6 now go directly from the trial courts
to this court by appeal or writ or error, and not first to the
court of appeals, as was formerly the case. All other
cases which are reviewable go to the court of appeals, and
the judgments of that court are final. *Second.* The only
control which this court has over that court while in
the exercise of its appellate powers is a supervisory one,
to be exercised by *mandamus*, prohibition and *certiorari*

according to the usages of law. *Third.* This superintending control of the court of appeals over inferior courts, as granted in said section 12, is cut down by the fifth amendatory section, which gives this court the exclusive superintending control over the trial courts in all those cases reviewable by this court; so that the court of appeals has now no power to use the original remedial writs by way of a superintending control over the trial courts in matters reviewable by this court.

There is another change which is not so clearly expressed by the amendment, but which in our opinion is sufficiently obvious, namely, that this court is still the final arbiter in all those controversies which are specified in said section 12, no matter in what court they may originate. Before the amendment this court had appellate jurisdiction in all cases involving the construction of the constitution, and the other specified cases including cases involving the title to an office under this state. It had such jurisdiction though the case originated in the court of appeals. There is nothing in the amendment which can by any fair construction be said to take away from this court appellate power in all such cases. We, therefore, come to this, the court of appeals either has no original jurisdiction over the cases specified in section 12 of article 6 of the constitution; or an appeal must still lie from that court to this in the cases specified in that section when commenced in the court of appeals.

The question to which we are thus brought is by no means free from difficulty, and arguments may be offered to support either conclusion; but in our opinion the first is the correct one, that is to say, the court of appeals has no original jurisdiction, by virtue of its power to hear and determine original writs, to determine those controversies over which this court has appellate jurisdiction. Our reasons, therefore, are these: The words of section 5 of the amendment, "all causes or proceedings reviewable by the supreme

court," have reference to and must mean those cases specified in section 12 of article 6, and which were before reviewable by this court. The clear inference is that this court shall still have appellate power *in all* such cases. But how is this power to be exercised? The section goes on to say that in all such cases writs of error shall run "to the circuit courts, and to courts having the jurisdiction pertaining to circuit courts," and appeals shall lie from such "trial courts directly" to the supreme court. The expressions "circuit courts and to courts having the jurisdiction pertaining to circuit courts," and "trial courts" mean the same thing. The court of appeals is not a "trial court;" it is an appellate court. The new section, therefore, provides from what courts appeals shall lie in the specified cases, and to what courts writs of error shall run, and the court of appeals is not named as one of them. The language used excludes the notion that this court has any appellate jurisdiction from the court of appeals.

The fifth amendatory section is built upon the assumption and theory that all cases which can be reviewed by this court on appeal or writ of error will originate in the trial courts. The conclusion seems to us clear that this court has no jurisdiction by appeal or writ of error in any case determined by the court of appeals ; and if this be true, and we are right in the view before expressed that this court remains the final arbiter in all those cases enumerated in section 12 of article 6 of the constitution of 1875, it must follow that the court of appeals is without jurisdiction, original or appellate, in any such case. Its original, as well as appellate, jurisdiction is confined to those cases, the subject-matter of which is not within the appellate jurisdiction of this court.

While the amendment does not, in express terms, repeal any specified portion of the constitution of 1875, still the eleventh amendatory section does repeal all prior inconsistent provisions. A construction must be

accorded to the fifth and other amendatory sections which will give full force and effect to all of their provisions, and in doing this we are led to the result before stated—a result which is in keeping with our judicial appellate system when considered as a whole.

It follows from what we have said that the St. Louis court of appeals had no jurisdiction to hear and determine the *quo warranto* suit commenced therein, and a writ of prohibition is awarded the relator as prayed for in his petition.    All concur.