THE STATE ex rel. WALKER, Attorney General, v. BUS.

In Banc, June 30, 1896.

,135  325|
140  536|
      135   325
      152   204
      152   239
      135   325
      153   201·
      135   325
      167   692
      91a  443
      135   325
      96a  ⁸163'

1. **Public Offices, Incompatibility of:** COMMON LAW. The acceptance by one who holds a public office of a second public office incompatible therewith operates, *ipso facto*, at common law, as a resignation of the first.

2. ——: ——: STATUTE: CONSTITUTION. A like rule obtains where the holding of two offices by one person at the same time is forbidden by the constitution or by statute.

3. ——: ——: ——: ——: RESIGNATION OF SECOND OFFICE. The incumbent's subsequent resignation of the second office would not restore him to the original office vacated by his own act.

4. **Public Officer:** CONSTITUTION: RESIGNATION. A public officer may, under the constitution of this state (art. 14, sec. 5) resign at will.

5. ——: DEPUTY SHERIFF: STATUTE. Deputy sheriffs appointed by the sheriff with the approval of the court, under Revised Statutes, 1889, sections 8181, 8182, are public officers.

6. ——: ——: "STATE OFFICER." A deputy sheriff is not a "state officer" within the meaning of the constitution, article 9, section 18, which declares that in cities or counties having more than two hundred thousand inhabitants "no person shall at the same time be a state officer and an officer of any county, city, or other municipality."

7. ——: ——: ST. LOUIS SCHOOL DIRECTOR. The foregoing constitutional inhibition does not, therefore, apply to a deputy sheriff of the city of St. Louis who also holds the office of school director in said city.

8. ——: ——: ——. A deputy sheriff of the city of St. Louis does not "hold office under the city" within the meaning of the act of the legislature of 1845 (Laws, p. 182, sec. 1), providing that no such office holder shall be a member of the board of school directors of said city.

9. ——: ——: ——. The offices of deputy sheriff and school director in the city of St. Louis are not incompatible.

*Quo Warranto.*

JUDGMENT OF OUSTER DENIED.

*R. F. Walker*, attorney general, and *C. H. Krum* for relator.

(1) The rule that two incompatible offices can not be held by the same incumbent is founded on the plainest principles of public policy, and has obtained from very early times, and when one has two incompatible offices both can not be retained. The public has a right to know which is held and which is surrendered and it should not be left to chance or the uncertain or fluctuating whim of the officeholder to determine. The rule, therefore, is "that the acceptance of and qualification for an office incompatible with one then held is a resignation of the former and the acceptance of the latter *ipso facto* vacates the former." And where a man accepts an office under the state he vacates another held under the same sovereignty. Mechem on Pub. Offices, secs. 420 to 426; Throop on Pub. Offices, secs, 30, 31; Dillon on Municipal Corp.,secs. 225 to 227; *Moore v. Lusk*, 48 Mo. 242; *State v. Draper*, 45 Mo. 355; *Howard v. Shoemaker*, 35 Ind. 111; *Cotton v. Phillips*, 56 N. H. 220; *People v. Hanifan*, 96 Ill. 420; *Stubs v. Lee*, 64 Maine, 195; *Shell v. Cousins*, 77 Va. 328. (2) Let us now see what is the character of the office of deputy sheriff, held also by the defendant. It is in some senses considered to be a municipal office. *Britton v. Steber*, 62 Mo. 370; *State ex rel. v. Dillon*, 90 Mo. 229; Charter of city of St. Louis, sec. 1, art. 4. Considering the office of sheriff to be a municipal office defendant can not hold it and at the same time retain his seat on the board under section 1, Acts 1845, page 182. (3) In view, however, of the nature, duties

and history of the office of sheriff, the better view is that it is a state office. *State ex rel. v. Finn*, – Mo. App. 347; *State ex rel. v. Mason*, 4 Mo. App. 397. And it is certainly so intended by sections 10, 11 of article 9 of the constitution which provides for the office. (4) Conceding it to be a state office, it is incompatible with that of school director under the provisions of section 18, article 9 of the state constitution. It is difficult to conceive how the defendant can hold the two important offices of school director and deputy sheriff, and personally at all times perform the duties of each as required by law. No matter from what light the picture is viewed, the latter office is incompatible with the former and by accepting the latter he vacated the former. Having then usurped, intruded himself into, and held and executed the former office and being still doing so, under the provisions of sections 7390 and 7394, Revised Statutes, he should be ousted.

*Ford Smith* for respondent.

(1) Neither the sheriff of the city of St. Louis nor his deputies hold office under the city of St. Louis. Nor are they city officers. Constitution of Mo., art. 9, sec. 10; *State ex rel. v. Rombauer*, 101 Mo. 499; *State ex rel. v. McKee*, 69 Mo. 504; *State ex rel. v. Dillon*, 87 Mo. 487; *State ex rel. v. Dillon*, 90 Mo. 229; *State ex rel. v. Mason*, 4 Mo. App. 377; *State ex rel. v. Finn*, 8 Mo. App. 341. (2) A deputy sheriff is not an officer at all. He is a mere employee of the sheriff. He is removable at the pleasure of the sheriff. He gives no bond. He is not commissioned by the governor, as all officers must be. *Portman v. State Board*, 50 Mich. 258; *Attorney General v. Cain*, 84 Mich. 223; *People v. Hills*, 1 Lans. 202; *State v. Champlin*, 2 Bailey (S. C.),

220; *Darley v. The Queen*, 12 Clark & Finnelly, 520.
(3) He is not prohibited from holding the positions of
member of the school board and deputy sheriff at the
same time by section 18, article 9, of constitution.
The school board is not a municipality. *State ex rel.
v. School Board*, 112 Mo. 213; *Heller v. Stremmel*, 52
Mo. 309; *State ex rel. v. Leffingwell*, 54 Mo. 458; Ander-
son's Law Dic., title, Municipality; *Kilgore v. Magee*,
85 Pa. St. 401; *Philadelphia v. Fox*, 64 Pa. St. 169;
Dillon on Municipal Corp. [4 Ed.], secs. 19, 20, 22, 24,
58, 183, 184; Beach on Public Corporation, sec. 59.
(4) There is no question of two incompatible offices
involved. Even if the employment of deputy sheriff
should be held to be an office, still it is not incompat-
ible with the office of school director. *The Queen v.
Parham*, 18 L. J. Rep. (N. S.) 281; *People v. Green*,
58 N. Y. 295; *State v. Feebleman*, 28 Ark. 424; *Com-
monwealth v. Kent*, 2 Cush. 577. (5) As respondent
does not now hold the position of deputy sheriff, and
did not when the information herein was filed, a judg-
ment of ouster could remedy no wrong—accomplish no
good purpose. It would simply entail upon the school
board the expense of a special election to fill the va-
cancy. In such a case the courts will not interfere.
*State v. Fisher*, 28 Vt. 714; *Morris v. Underwood*, 19
Ga. 559; *Commonwealth v. Reigart*, 14 S. & R. 216;
*State v. Schnierle*, 5 Rich. L. Rep. 299.

MACFARLANE, J.—On the seventh day of Novem-
ber, 1893, respondent was elected a director of the pub-
lic schools of St. Louis for a term of four years from
that day.

The public schools of St. Louis are managed and
controlled by a corporation under the name of "the
Board of President and Directors of the St. Louis Pub-
lic Schools." Its territory is coterminous with that of

the city of St. Louis, and its powers are vested in a board of twenty-one directors elected for terms of four years by the qualified voters of the city.

Respondent at the time of his election, and at the time of the commencement of this proceeding, possessed all the qualifications necessary to make him eligible to take and hold the office of director.

In January, 1895, he was appointed deputy sheriff of the city of St. Louis, and continued to hold that position and perform its duties until April 10, 1895, when he resigned, and has not since held the position or exercised any of the duties of such deputy. After his appointment, acceptance, and qualification as deputy sheriff, respondent continued to act as such school director.

This is a proceeding in *quo warranto*, commenced April 14, 1896, against respondent, the purpose of which is to oust him from the office of school director, on the ground, as alleged in the information, that by his acceptance of the position of deputy sheriff the office of director at once became vacant.

The charter of the public school corporation has this provision: "No member of the board of aldermen, or board of delegates, or any person holding office under the city of St. Louis, whether elected or appointed, shall be a member of the board of school directors of the city of St. Louis." Acts of 1845, sec. 1, page 182.

Section 5 of the same act provides that any person violating section 1 shall be guilty of a misdemeanor, and shall, moreover, be disqualified from holding a seat in said board, or acting as one of its officers.

The state constitution has this provision:

"In cities or counties having more than two hundred thousand inhabitants, no person shall, at the same time, be a state officer and an officer of any county,

city, or other municipality; and no person shall, at the same time, fill two municipal offices, either in the same or different municipalities." Sec. 18, art. 9.

I. The rule at common law is well settled that one who, while occupying a public office, accepts another which is incompatible with it, the first will, *ipso facto*, terminate without judicial proceeding or any other act of the incumbent. The acceptance of the second office operates as a resignation of the first. *State ex. rel. v. Lusk*, 48 Mo. 242; Mechem, Pub. Offices, secs. 420–426; Throop, Pub. Officers, secs. 30, 51.

The rule, it is said, is founded upon the plainest principles of public policy, and has obtained from very early times. *King v. Patteson*, 4 B. & Ad. 9.

"The rule has been generally stated in broad and unqualified terms, that the acceptance of the incompatible office, by whomsoever the appointment or election might be made, absolutely determined the original office, leaving no shadow of title in the possessor, whose successor may be at once elected or appointed, neither *quo warranto* nor a motion being necessary." 1 Dill. Mun. Corp. [4 Ed.], sec. 225; *People ex rel. v. Brooklyn*, 77 N. Y. 503.

Where the holding of two offices by the same person, at the same time, is forbidden by the constitution or a statute, the effect is the same as in case of holding incompatible offices at common law. In such case, the illegality of holding the two offices is declared by positive law, and incompatibility in fact is not essential. In each case the holding of two offices is illegal; it is made so in one case by the policy of the law, and in the other by absolute law. In either case the law presumes the officer did not intend to commit the unlawful act of holding both offices, and a surrender of the first is implied. *State v. Draper*, 45 Mo. 355; 19 Am. and Eng. Encyclopedia of Law, 562u, and cases

cited; Mechem, Pub. Offices, secs. 429–431; *People ex rel. v. Brooklyn*, 77 N. Y. 503.

"An exception is made to the general rule in those cases in which the officer can not vacate the first office by his own act, upon the principle that he will not be permitted to do indirectly what he could not do directly." Mechem, Pub. Offices, sec. 421.

Whatever doubt may exist in some jurisdictions as to the right of a public officer to resign his office without the concurrence of the officer or body which has the power to act upon it, all doubt is removed in this state by a constitutional recognition of the right. The constitution (sec. 5, art. 14) declares:

"In the absence of any contrary provision, all officers now or hereafter elected or appointed, subject to the right of resignation, shall hold office during their official terms, and until their successors shall be duly elected and qualified."

From what has been said it follows that if the position of school director and deputy sheriff are incompatible public offices, or if the constitution or statute prohibits both positions to be held by the same person at the same time, then an acceptance of the office of deputy sheriff operated as a resignation of the office of school director. The subsequent resignation of the former office by respondent would not restore him to the latter. If the office of director became vacant respondent "could not put himself back into it by his own act." *State ex rel. v. Goff*, 15 R. I. 505, *loc cit.* 509.

II. A public office is defined to be "the right, authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for

the benefit of the public." Mechem, Pub. Offices, 1. The individual who is invested with the authority and is required to perform the duties is a public officer.

The courts have undertaken to give definitions in many cases, and while these have been controlled more or less by laws of the particular jurisdictions, and the powers conferred and duties enjoined there-under, still all agree substantially that if an officer receives his authority from the law and discharges some of the functions of government he will be a public officer. *State v. Valle*, 41 Mo. 30; *People ex rel. v. Langdon*, 40 Mich. 673; *Rowland v. Mayor*, 83 N. Y. 376; *State ex rel. v. May*, 106 Mo. 488.

Deputy sheriffs are appointed by the sheriff, subject to the approval of the judge of the circuit courts; they are required to take the oath of office, which is to be indorsed upon the appointment and filed in the office of the clerk of the circuit court. After appointment and qualification they "shall possess all the powers and may perform any of the duties prescribed by law to be performed by the sheriff." R. S. 1889, secs. 8181 and 8182.

The right, authority and duty are thus created by statute; he is invested with some portions of the sovereign functions of the government to be exercised for the benefit of the public and is, consequently, a public officer within any definition given by the courts or text writers.

It can make no difference that the appointment is made by the sheriff, or that it is in the nature of an employment, or that the compensation may be fixed by contract. The power of appointment comes from the state, the authority is derived from the law, and the duties are exercised for the benefit of the public. Chief Justice MARSHALL defines a public office to be "a public charge or employment." *U. S. v. Maurice*,

2 Brock. 96. Whether a public employment constitutes the employe a public officer depends upon the source of the powers and the character of the duties.

The constitution requires "all officers both civil and military, under authority of this state" before entering on the duties of their office, to take and subscribe a prescribed oath.

The statute requires a deputy sheriff to take "the oath of office" and his powers and duties are made equal to those of the sheriff himself. The deputy sheriff is certainly a public officer under the laws of this state, and his power and authority is coextensive with that of sheriff. *State v. Dierberger*, 90 Mo. 369.

III. The question involving the greatest difficulty is whether a deputy sheriff is a state officer within the meaning of section 18 of article 9 of the constitution which declares: "In cities or counties having more than two hundred thousand inhabitants, no person shall, at the same time, be a state officer and an officer of any county, city or other municipality; and no person shall, at the same time, fill two municipal offices, either in the same or different municipalities; but this section shall not apply to notaries public, justices of the peace or officers of the militia."

In a popular sense a "state officer" is one whose jurisdiction is coextensive with the state. In a more enlarged legal sense a "state officer" is one who receives his authority under the laws of the state and performs some of the governmental functions of the state. The constitution in defining the rights, duties, powers and obligations of officers of the state, and in defining the jurisdiction of the courts in cases involving these rights and duties, adopts two forms of expression. Some provisions are made applicable to "state officers" and some to "officers under the state" or "under the authority of the state." The former

expression has been held to apply to officers in a popular sense, while the latter has been held to apply to state officers in a legal sense.

Thus the constitution gives the supreme court appellate jurisdiction in cases where any "state officer" is a party. Sec. 12, art. 6, and amendment adopted in 1883. This court held that the expression "state officer," as there used, applied only to such officers as had jurisdiction throughout the state and did not apply to an officer whose jurisdiction was confined to a county, as a sheriff or clerk of a circuit court. *State ex rel. v. Dillon*, 90 Mo. 229; *State ex rel. v. Spencer*, 91 Mo. 206.

The same section provides that the supreme court shall have appellate jurisdiction in cases involving "the title to any office under the state." It was held that under the form of expression here used the office of circuit clerk was included. *State ex rel. v. Rombauer*, 101 Mo. 502. Here we have two expressions in the same section and they must have been intended to have different meanings and this court gave effect to the obvious intention.

Section 6, article 14, provides that all officers "under the authority of this state" shall take a prescribed oath of office; and this court held that a deputy constable was such an officer. *State v. Dierberger*, 90 Mo. 374.

Section 12, article 4, of the constitution provides: "No senator or representative shall, during the term for which he shall have been elected, be appointed to any office under this state, or any municipality thereof; and no member of congress or person holding any lucrative office under the United States, or this state, or any municipality thereof (militia officers, justices of the peace, and notaries public excepted) shall be eligible to either house of the general assembly, or

remain a member thereof, after having accepted any such office or seat in either house of congress.''

Under this section all officers (except those under the United States) are divided into two classes, viz.: ''officers under the state'' and officers ''under a municipality thereof.'' The language ''officers under the state'' would include justices of the peace, or they would not have been excepted. Officers of a county, though not named, would be included under the expression ''officers under the state.''

We come now to the section in question. It expressly divides the officers into three classes, ''state officers,'' ''officers of any county,'' and ''officers of a municipality.'' This section was quoted by Judge SHERWOOD as making plain the intention of the convention in the use of the expression state officer in section 12, article 6, and as convincing that a sheriff was not a state officer within its meaning. The learned judge says: ''If there is any reliability in plain words, this language must set the point discussed at rest and 'make assurance double sure.' '' *State ex rel. v. Spencer*, *supra*.

When we find the constitution using in different connections the same words to designate certain officers, we ought to infer that they were used on every occasion in the same sense. If the expression ''state officers,'' as used in this section was intended to mean the same as ''officers under the state,'' as used in other sections then it would include all officers (except municipal) from constable up to governor. What officers would then be included in the class ''officer of any county?'' Can we say that the language is tautological, and should be rejected in order to construe the section as we think it should have been written? As written it has a clear meaning and effect should be given to the words used. Constitutions are supposed to be carefully

prepared, and effect should be given to every word if possible.

But county officers, as distinguished from state officers, are distinctly recognized by the constitution. I quote from *State ex rel. v. Dillon*, 90 Mo. *supra*.

"Section 10, article 9, provides that 'there shall be elected by the voters of each county * * * a sheriff and coroner.' Section 12 of the same article declares that the 'General assembly shall * * * provide for and regulate the fees of all county officers.' Section 14 of the same article is as follows: 'Except as otherwise directed by this constitution, the general assembly shall provide for the election or appointment of such other county, township, and municipal officers as public convenience may require.' So that it appears from the section quoted, it in effect designates a sheriff as a county officer. After providing that a sheriff and coroner shall be elected in each county, it then provides that the legislature shall, by general law, provide for the election of *such other county, township, and municipal officers* as public convenience may require."

The section in question would not have been much more explicit if it had said "no person shall, at the same time, be a state officer and a sheriff or deputy sheriff of a county." It must be admitted that this section standing alone or taken in connection with the rest of the constitution, read it as you may, does not express a very intelligent or practical purpose, but its meaning is plain enough, in the light of former decisions, and it is not our business to make it over in order to conform it to our views of practicability.

But we know that the section was intended to apply alone to the county and city of St. Louis, and was intended to apply to a contemplated separation, the scheme of which had not then fully developed. It was therefore a jump in the dark, which could not be

certain. It was probably prepared by those interested in the separation and in the independence of the city of St. Louis. That it was intended by the scheme of separation that what are commonly denominated county officers should become officers under the city, is clear from the reading of section 1 of article 4 of the scheme and charter. It provides for the election of city officers, among which is named that of sheriff. If the sheriff was a municipal officer, as was contemplated he would be, then the section would be clearer and more practical.

A deputy sheriff is not, in our opinion, a state officer within the intent and meaning of said section of the constitution. In this section the officers are clearly classified by territorial jurisdiction and a sheriff falls under the class of county officers.

IV. While the city of St. Louis is strictly a municipal corporation its territory is also a subdivision of the state in which officers are elected to perform the functions of the state government as distinguished from those pertaining to municipal government. Those officers are in no sense municipal officers. Their designation as officers of the city of St. Louis refers to their territorial jurisdiction rather than to the governmental duties they perform. They are officers under the laws of the state and perform their duties within the city limits. The sheriff of the city of St. Louis is an officer of the city in the same sense that a sheriff of a county is an officer of the county. He is no more a municipal officer than a sheriff of a county is an officer of a municipal corporation, the territory of which is included in his jurisdiction. These propositions are settled by the decisions of this court. *State ex rel. v. Dillon*, 87 Mo. 490, 491; *State ex rel. v. McKee*, 69 Mo. 504; *State ex rel. v. Rombauer*, 101 Mo. 502; and

VOL. 135 mo—22

also *State ex rel. v. Mason*, 4 Mo. App. 380; *State ex rel. v. Finn*, 8 Mo. App. 341.

It follows from what has been said that the right to hold at the same time the office of deputy sheriff and school director is not forbidden by either section 1 of the Acts of 1845, or by section 18, article 9, of the constitution.

V. The remaining inquiry is whether the duties of the office of deputy sheriff and those of school director are so inconsistent and incompatible as to render it improper that respondent should hold both at the same time. At common law the only limit to the number of offices one person might hold was that they should be compatible and consistent. The incompatibility does not consist in a physical inability of one person to discharge the duties of the two offices, but there must be some inconsistency in the functions of the two; some conflict in the duties required of the officers, as where one has some supervision of the other, is required to deal with, control, or assist him.

It was said by Judge FOLGER in *People ex rel. v. Green*, 58 N. Y. *loc. cit.* 304: "Where one office is not subordinate to the other, nor the relations of the one to the other such as are inconsistent and repugnant, there is not that incompatibility from which the law declares that the acceptance of the one is the vacation of the other. The force of the word, in its application to this matter is, that from the nature and relations to each other, of the two places, they ought not to be held by the same person, from the contrariety and antagonism which would result in the attempt by one person to faithfully and impartially discharge the duties of one, toward the incumbent of the other. Thus, a man may not be landlord and tenant of the same premises. He may be landlord of one farm and tenant of another, though he may not at the same hour be able to do the

duty of each relation.   The offices must subordinate, one the other, and they must, *per se*, have the right to interfere, one with the other, before they. are incompatible at common law."

Sheriffs are given power, and it is made their duty, to preserve the peace, arrest and commit to jail all felons and traitors, execute all process and attend upon courts of record.

The board of directors of the St. Louis public schools has charge, control and management of the public schools and of all the property appropriated to the use of the public schools within said city.

We are unable to discover the least incompatibility or inconsistency in the public functions of these two offices, or where they could by possibility come in conflict or antagonism, unless the deputy sheriff should be required to serve process upon a director as such. We do not think such a remote contingency sufficient to create an incompatibility.   The functions of the two offices should be inherently inconsistent and repugnant.   *State ex rel. v. Goff*, 15 R. I. 507.

It has been held in this state that the office of clerk of the circuit court was not incompatible with that of clerk of the county court.   *State ex rel. v. Lusk*, 48 Mo. 242.   The possibility of a conflict in the duties of these two offices seems to me to be greater than in those of deputy sheriff and school director.

These two offices then being neither repugnant to the constitutional or statutory prohibitions, nor incompatible, they may properly be held by one person. Judgment of ouster is denied.   All the judges concur.