Dear Senator Cox:
This letter is in answer to your request for a legal opinion, which reads as follows:
 "Is it permissible for a superintendent of schools, for a six-director school district, to hold an elective office and/or an office or offices in a political party?"
Section 168.201, RSMo. Supp. 1975, provides:
 "The board of education in all districts except metropolitan districts may employ and contract with a superintendent for a term not to exceed three years from the time of making the contract, and may employ such other servants and agents as it deems necessary, and prescribe their powers, duties, compensation and term of office or employment which shall not exceed three years. It shall provide and keep a corporate seal."
The duties of the board of education of a six-director school district are numerous and are detailed in various places throughout the statutes. Basically, they are to oversee the day to day functioning of the school district, and to report on the activities of the school district to various higher authorities.
In general, villages and other municipal corporations have no power to control or affect the operation of school districts. Frequently, a school district, such as the one considered here, encompasses more than one town. These school districts are funded and operated completely apart from any control by a village that it encompasses.
According to our information, the person in question is the "mayor" of Fortescue, Missouri, which is a village. It is assumed that the person referred to as "mayor" is actually the chairman of the board of trustees of the village, and he will be referred to as such herein. Section 80.090, RSMo. 1969, provides the powers and duties of the trustees of villages, and reads as follows:
"Such board of trustees shall have power:
 (1) To pass bylaws and ordinances to prevent and remove nuisances;
 (2) To prevent, restrain and suppress bawdyhouses, gambling houses and other disorderly houses within the limits of such town, or any addition to said town, or any commons thereto attached;
(3) To restrain and prohibit gambling;
 (4) To license, tax and regulate merchants, peddlers and auctioneers, and to regulate and prohibit the sale or giving away of intoxicating liquors under merchants' licenses in such towns; provided, that druggists and pharmacists may sell upon prescriptions, as is provided by law;
 (5) To provide for licensing and regulating and prohibiting dramshops and tippling houses, public shows, circuses, theatrical and other amusements, to the distance of one-half mile from the corporate limits of such town;
(6) To prohibit the firing of firearms;
 (7) To prevent furious and unnecessary riding or driving of any horse or other animal within such town, or such part thereof as they may think proper;
(8) To establish night watches and patrols;
 (9) To erect and maintain calabooses, poorhouses and hospitals;
 (10) To prevent the introduction and spreading of contagious diseases;
(11) To organize and maintain fire companies;
(12) To prevent and extinguish fires;
 (13) To establish fire limits and to define the limits within which wooden buildings, stables, manufactories and other structures which may increase the danger of calamities from fires shall not be erected;
 (14) To establish and provide for wells, cisterns and pumps;
 (15) To regulate the construction of chimneys and flues thereof, and to appoint an inspector of chimneys and flues, and to define the duties and fix the compensation thereof;
(16) To establish and regulate markets;
(17) To erect and repair bridges and culverts;
 (18) To erect, repair, and regulate wharves and the rate of wharfage;
 (19) To regulate the landing and stationing of steamboats, rafts and other water craft;
 (20) To provide for the inspection of lumber, building material and for provisions to be used or offered for sale in such town, or to be exported therefrom;
 (21) To regulate the storage of gunpowder and other combustible materials;
(22) To regulate the slaughtering of animals;
 (23) To license, tax, regulate and prohibit ball and tenpin alleys, billiards and pool tables, or other tables upon which games are played for pay or amusement;
 (24) To license, tax, regulate and prohibit all other games for pay or amusement; provided, that no permission shall be given to bet money, property or other thing upon any game, or to license any such game;
 (25) To license, tax and regulate wagons and teams, livery, sale and feed stables, and any vehicle or team kept or let for pay;
 (26) To license, tax and regulate hay, grain and stock scales;
 (27) To levy and collect taxes upon property and the licenses herein provided for;
 (28) To borrow money for the improvement of such town, or to supply the same with water or gas;
 (29) To open and form public squares, avenues drains and sewers, and to keep the same cleaned and in order;
(30) To locate and lay out new streets and alleys;
(31) To establish the grade of streets and alleys;
 (32) To determine and fix the width of sidewalks; and the material of which the same may be built; and
 (33) To widen streets heretofore laid out in such town, and to appoint three commissioners to assess the damages done to property upon which such street or alley may be located, deducting from such damages the amount of benefit, if any, such street or alley, or the widening thereof, may be to the same; but all assessments so made by the commissioners shall be reported, as soon as may be, to the board of trustees, who may approve or reject the same; and all persons aggrieved by such assessment may, within fifteen days after receiving notice of such assessment, appeal therefrom to the next circuit court of the county, by giving notice of such appeal to said board of trustees at least fifteen days before the first day of the term to which said appeal is taken; and the circuit court, on such appeal, shall be possessed of the case and proceed therewith to final judgment, according to the law. In all cases of assessment or appeal, the land to be used for or occupied by the street or alley may be taken possession of for the purpose of establishing and improving such street or alley, as soon as the amount of damages so assessed shall be tendered to the owner;
 (34) Also to open, clear, regulate, grade, pave or improve the streets and alleys of such town;
 (35) To provide for lighting the streets and erecting lamps thereon;
 (36) To regulate and prohibit the running at large of dogs, hogs, cattle and horses in the streets and alleys of such town, and to impose and collect tax on dogs not exceeding one dollar each;
 (37) To impose and appropriate fines for forfeitures and penalties for breaking or violating their ordinances;
(38) To levy and collect taxes;
 (39) To regulate the enclosure of any common field belonging to or within the limits of such town, and,
 (40) To pass such other bylaws and ordinances for the regulation and police of such town and commons thereto appertaining as they shall deem necessary, not repugnant to and contrary to the laws of the state."
In addition to the duties required by the above-quoted section, the village trustees have other official duties to perform, as will be noted from other sections of the statutes, to which we shall refer.
Section 80.130, RSMo. 1969, gives the trustees the power to sprinkle and oil the streets of the village.
Section 80.170, RSMo. 1969, gives the trustees power to further restrain domestic animals, and § 80.180, RSMo. 1969, gives the trustees powers to effect sidewalk construction and repair.
Section 80.210, RSMo. 1969, requires the chairman of the board of trustees to make a semi-annual report to be published publicly.
Section 80.240, RSMo. 1969, gives the trustees power to appoint an assessor, collector, marshal, treasurer and such other officers, servants and agents as may be necessary, and remove them from office and prescribe their duties.
Having set out the statutory powers of school boards, school superintendents and chairman of village board of trustees, we will now proceed to examine whether these duties are in conflict.
At common law there was no limitation upon the number of offices one person could hold at the same time, so long as such offices were compatible. Of course, one could not hold two or more incompatible offices at the same time, for the reason this was against public policy. This principle was discussed by the court in the case of State ex rel. Walker v. Bus, 135 Mo. 325,36 S.W. 636 (1896). In that opinion, at pp. 338-339, the court said:
 "* * * At common law the only limit to the number of offices one person might hold was that they should be compatible and consistent. The incompatibility does not consist in a physical inability of one person to discharge the duties of the two offices, but there must be some inconsistency in the functions of the two; some conflict in the duties required of the officers, as where one has some supervision of the other, is required to deal with, control or assist him.
 It was said by Judge FOLGER in People ex rel. v. Green, 58 N.Y. loc. cit. 304: `Where one office is not subordinate to the other, nor the relations of the one to the other such as are inconsistent and repugnant, there is not that incompatibility from which the law declares that the acceptance of the one is the vacation of the other. The force of the word, in its application to this matter is, that from the nature of the relations to each other, of the two places, they ought not to be held by the same person, from the contrariety and antagonism which would result in the attempt by one person to faithfully and impartially discharge the duties of one, toward the incumbent of the other. * * *"
Upon comparison of the possible duties of superintendent of a six-director school district with those of a village chairman of the board of trustees, as shown by the statutes referred to above, and keeping in mind the principle of law regarding incompatibility of offices discussed in State ex rel. Walkerv. Bus, supra, it is noted the duties of superintendent of a six-director school district are not inconsistent, repugnant, or opposed to the duties of chairman of a village board of trustees, and that the former is not subordinate to the latter office in any way. Hence, said offices are not incompatible.
We are unable to find any constitutional or statutory requirements that the superintendent of a six-director school district or the chairman of a village board of trustees shall not hold any other office or employment during the term of office for which he was elected or appointed.
We are also unable to find any constitutional or statutory requirements that a superintendent of a six-director school district or the chairman of a village board of trustees not hold any office in a political party during the term of office for which he was elected or appointed. There is no prohibition in the law against a superintendent or a chairman of the board of trustees of a village holding office in a political party.
Very truly yours,
 JOHN ASHCROFT Attorney General